AMERICAN FEDERATION OF
GOVERNMENT EMPLOYEES,
AFL–CIO, et al., Plaintiffs,

v.

Alan K. CAMPBELL et al., Defendants.

METAL TRADES DEPARTMENT,
AFL–CIO, et al., Plaintiffs,

v.

Alan K. CAMPBELL et al., Defendants.

Civ. A. Nos. 78–2270, 79–19.

United States District Court,
District of Columbia.

July 26, 1979.

Patrick C. O'Donoghue, Robert Matisoff, Washington, D. C., for Metal Trades Dept.

James R. Rosa, Washington, D. C., for American Federation of Government Emp., AFL–CIO.

Raymond M. Larizza, Dept. of Justice, Washington, D. C., for defendants.

MEMORANDUM OPINION

JUNE L. GREEN, District Judge.

*Introduction*

This matter is before the Court on cross-motions for summary judgment. Upon

consideration of these motions, memoranda in support thereof and the entire record, the Court concludes that there are no genuine issues of material fact and that both motions should be denied in part and granted in part.

This action involves the consolidation of two cases concerning identical issues which were filed by two institutional plaintiffs, the American Federation of Government Employees, AFL–CIO (AFGE) and the Metal Trades Department, AFL–CIO (MTD) on behalf of their members and members of the class of employees similarly affected. After AFGE was certified as representative of the class by order of this Court dated March 27, 1979, the two actions were consolidated.

### Facts

During July and August 1978, wage surveys in accordance with 5 U.S.C. § 5343 were conducted in the wage areas of Dothan, Alabama; Tulsa, Oklahoma; Little Rock, Arkansas; Madison, Wisconsin; and Columbus and Albany, Georgia.[1] As a result of these surveys and by operation of 5 U.S.C. § 5344(a), pay increases in excess of 5.5% were to take effect on October 1, 1978 in the Dothan, Alabama

wage area, and on October 8, 1978, in each of the other five wage areas.[2]

On October 10, 1978, the President signed into law Pub.L. No. 95–429 (hereinafter pay cap legislation), which is set forth in the pertinent part in the margin.[3]

On October 20, 1978, the Civil Service Commission issued CSC Bulletin 532–30. It provided that the 5.5% cap on Federal wage increases mandated by the pay cap legislation applied retroactively to wage increases with effective dates between October 1, 1978 and October 10, 1978. As a result of CSC Bulletin 532–30, the employees herein have not received the full amount of the survey determined wage increases. Instead, they have received increases of 5.5%.

The named plaintiffs and the members of the class they represent seek declaratory and mandamus relief challenging CSC Bulletin 532–30 in an effort to receive the full percentage increases determined pursuant to the aforementioned wage surveys.[4]

### Discussion

The initial question the Court will discuss is whether the pay cap legislation may be applied retroactively to limit statutorily mandated wage increases. Plaintiffs

1. § 5343. Prevailing rate determinations; Wage Schedules;
   (a) The pay of prevailing rate employees shall be fixed and adjusted from time to time as nearly as is consistent with the public interest in accordance with prevailing rates . . . To carry out this subsection—
   (4) the head of each agency having prevailing rate employees in a wage area shall apply, to the prevailing rate employees of that agency in that area, the wage schedules and rates established by the lead agency, or by the Office of Personnel Management, as appropriate, for prevailing rate employees in that area; and
   (b) The Office of Personnel Management shall schedule full-scale wage surveys every 2 years and shall schedule interim surveys to be conducted between each 2 consecutive full-scale wage surveys. The Commission may schedule more frequent surveys when conditions so suggest.

2. § 5344. Effective date of wage increase;
   (a) Each increase in rates of basic pay granted, pursuant to a wage survey, to prevailing rate employees is effective not later than the first day of the first pay period which begins on or after the 45th day, excluding Saturdays and Sundays, following the date the wage survey is ordered to be made.

3. No part of any of the funds appropriated (for fiscal year 1979) . . . may be used to pay the salary or pay of any individual . . . in an amount which exceeds the rate of salary of basic pay payable . . . on September 30, 1978, by more than 5.5%, as a result of any adjustments which take effect during (fiscal year 1979) under—
   (3) Section 5343 of Title 5 . . . if such adjustment is granted pursuant to a wage survey . . . . .

4. Pursuant to Reorganization Plan No. 2, 43 F.R. 36,037 (Aug. 15, 1978), the Civil Service Commission was abolished effective January 1, 1979. Reorganization Plan No. 2 established the Office of Personnel Management and transferred to it the duties and responsibilities with respect to the federal prevailing wage rate system formerly discharged by the Civil Service Commission.

contend that through the operation of 5 U.S.C. §§ 5343(a)(4) and 5344(a), plaintiffs became legitimately entitled to receive the full amount of the scheduled wage increases effective October 1, 1978 for the Dothan, Alabama wage area, and October 8, 1978 for the other wage areas. They further contend that defendants had a ministerial duty to implement these wage increases, and that the subsequent approval of the pay cap legislation may not displace their entitlement.

Defendants assert that the statutory language "as is consistent with the public interest" in 5 U.S.C. § 5341 *et seq.* (hereinafter the Act) provides broad agency discretion in implementing wage adjustments. Defendants argue that this broad discretion and the express statutory mandate of the pay cap legislation authorized agency heads to impose a 5.5% limit on pay increases with effective dates on or after October 1, 1978.

Defendants cite no authority in support of their contention that the government may decrease retroactively wage rates for services already performed. Indeed, defendants admit ignorance of any previous situation in which federal employees, by retroactive application of an Act of Congress or Presidential determination, have been denied, or suffered a diminution of, immediately receivable employment benefits such as pay, leave, insurance or health benefits.

Plaintiffs have cited decisions of the Comptroller General, which hold that a federal employee who obtains an employee benefit under statutes existing at the time of the employment, obtains a vested right to that benefit which may not be disturbed retroactively. *United States Civil Service Commission*, B–150041, 42 Comp.Gen. 202 (1962); *Director, Bureau of the Budget*, B–10542, 31 Comp.Gen. 109 (1952).

The Act evinces a Congressional policy of wage parity for specified federal employees with their colleagues in the private sector.[5] It sets forth detailed procedures and requirements for implementing this policy. The legislative history of the Act discloses criticism based on the rigidity of its requirements and the lack of agency discretion it affords. H.R. Report No. 92–339, 92 Cong. Sess. (1972). Additionally, in *Blaha v. U. S.*, Cust. & Pat.App., 511 F.2d 1165 (1975), a case involving a wage determination affecting crews of marine vessels under a statutory scheme virtually identical to that of the Act herein, the Court discussed the proper role of the public interest exception at 1170:

> . . . [T]he 'public interest' exception was written to provide flexibility needed to eliminate anomalies and inequities that might arise from too literal conformity to industry pay practices. It was not written to authorize a complete frustration of the Congressional scheme.

The Court concludes that the Act provides plaintiffs with a vested statutory right to receive the full amount of the survey determined wage increases,[6] effective October 1, 1978 for the Dothan, Alabama wage area, and October 8, 1978 for the other wage areas before the Court until October 10, 1978 when the President signed the pay cap into law. This right may not be retroactively disturbed by subsequent legislation nor the public interest exception of the Act itself. Plaintiffs' pay rates were adjusted in accordance with the mandate of

---

**5.** § 5341. Policy

It is the policy of Congress that rates of pay of prevailing rate employees be fixed and adjusted from time to time as nearly as is consistent with the public interest in accordance with prevailing rates and be based on principles that—

(1) there will be equal pay for substantially equal work for all prevailing rate employees who are working under similar conditions of employment in all agencies within the same local wage area;

(2) there will be relative differences in pay within a local wage area when there are substantial or recognizable differences in duties, responsibilities and qualification requirements among positions;

(3) the level of rates of pay will be maintained in line with prevailing levels for comparable work within a local wage area;

(4) the level or rates of pay will be maintained so as to attract and retain qualified prevailing rate employees.

**6.** The Court does not reach the question of whether the relationship between plaintiffs and the government is contractual in nature.

§ 5343(b). Plaintiffs' right to receive the adjusted pay rates vested on the effective date of the raises pursuant to § 5344(a), before the pay cap became law. Defendants' duty to implement the wage increases on the effective dates or to make retroactive payment some time thereafter pursuant to § 5344(b)[7] was ministerial. The public interest exception may not be applied retroactively to disrupt the entire wage scheme set forth in the Act. Moreover, for this Court to allow defendants to deprive plaintiffs of pay due for services already performed but still owing would present serious Constitutional questions. *United States v. Larionoff*, 431 U.S. 864, 97 S.Ct. 2150, 53 L.Ed.2d 48 (1977).

These Constitutional considerations are not present with regard to prospective application of the pay cap. The 5.5% ceiling applies to all services performed on or after the effective date of the pay cap legislation, October 10, 1978. It is settled that Congress has the authority to reduce the pay of the plaintiffs prospectively without interfering with any of their Constitutional rights. *See United States v. Larionoff, supra*, 431 U.S. at 879, 97 S.Ct. 2150; *Bell v. United States*, 366 U.S. 393, 401, 81 S.Ct. 1230, 6 L.Ed.2d 365 (1961); *United States v. Dickerson*, 310 U.S. 554, 60 S.Ct. 1034, 84 L.Ed. 1356 (1940); *United States v. Yoshida International, Inc.*, Cust. & Pat.App., 526 F.2d 560 (1975).

An appropriate order is entered herewith and this action is dismissed.

### ORDER

Upon consideration of the parties' cross-motions for summary judgment, the supporting memoranda and the entire record herein, it is by the Court this 26th day of July 1979,

ORDERED that plaintiffs' motion be granted and defendants' motion denied

7. § 5344. Retroactive Pay

(b) Retroactive pay is payable by reason of an increase in rates of basic pay referred to in subsection (2) of this section only when—

    (1) the individual is in the service of the Government of the United States, including service in the armed forces, or the government of the District of Columbia on the date

with regard to the time period from October 1, 1978 until the President signed P.L. No. 95–429 into law on October 10, 1978 with respect to the Dothan, Alabama wage area; it is further

ORDERED that plaintiffs' motion be granted and defendants' motion be denied with regard to the time period from October 8, 1978 until the President signed P.L. No. 95–429 into law on October 10, 1978 for the Tulsa, Oklahoma; Little Rock, Arkansas; Madison, Wisconsin; and Columbus and Albany, Georgia wage areas; it is further

ORDERED that defendants' motion be granted and plaintiffs' motion denied with regard to the time period after which the President signed P.L. No. 95–429 into law; it is further

ORDERED that defendants make whole the plaintiffs for the loss of salary and any other benefits based on salary consistent with the above; and it is further

ORDERED that this action be and hereby is dismissed.

of the issuance of the order granting the increase; or

    (2) the individual retired or died during the period beginning on the effective date of the increase and ending on the date of issuance of the order granting the increase and only for services performed during that period.