Carolyn THOMAS, et al., Plaintiffs,

v.

Marion BARRY, et al., Defendants.

Civ. A. No. 80–3215.

United States District Court,
District of Columbia.

July 9, 1982.

---

Ralph J. Temple, Heller & Lloyd, Washington, D. C., for plaintiffs.

Robert C. Seldon, Asst. U. S. Atty., John H. Suda, Asst. Corp. Counsel, Jane P. Danowitz, James R. Rosa, American Federation of Government Employees, Washington, D. C., for defendants.

## MEMORANDUM

HAROLD H. GREENE, District Judge.

Plaintiffs challenge their transfer from the U.S. Department of Labor to the D. C. Department of Employment Services. They seek an injunction which either would reinstate them to the federal competitive service or would grant them all the rights, benefits, and privileges available to federal employees in the competitive service. Defendants' motions to dismiss or for judgment on the pleadings will be granted on both jurisdictional and substantive grounds.

### I

28 U.S.C. § 1364 provides that "for purposes of this chapter, references to the laws of the United States or Acts of Congress do not include laws applicable exclusively to the District of Columbia." Plaintiffs' statutory claims have their alleged jurisdictional basis in 28 U.S.C. § 1331 which is, of course, part of the chapter [1] referred to in section 1364. Thus, if the statutes upon which plaintiffs principally rely are laws "applicable exclusively to the District of Columbia," there is no jurisdictional basis for this action in this Court.

While the issue is not free from doubt, it is the Court's conclusion that sections 204(g), 713(d), and 422(3) of the D. C. Home Rule Act,[2] which form the basis of plaintiffs' suit, are in that category.

Section 204 created a local governmental agency to provide the District of Columbia with its own public employment service, and it transferred to that agency the functions formerly performed by the U.S. Department of Labor, subsection (g) specifying that employees transferred pursuant to the section shall retain the competitive service rights they held prior to the transfer. Section 713 deals generally with the transfer to the District of personnel, property, and funds, and subsection (d) of that section provides that employees being transferred shall not by reason of the transfer be deprived of the civil service rights, benefits, and privileges they held prior to the transfer. And section 422(3) similarly mandates that the newly-established D. C. personnel system shall provide to the employees benefits at least equal to those which they enjoyed immediately prior to the establishment of that system.

All of these provisions deal with the organization of the new District of Columbia government and the status of the employees being transferred thereto. To be sure, these provisions also have an indirect effect on the preexisting federal rights of the employees but, in the opinion of the Court, that collateral consequence is not enough to remove the sections from the category of laws applicable exclusively to the District.

1. Chapter 85.

2. District of Columbia Self-Government and Governmental Reorganization Act, P.L. 93–198, 87 Stat. 774.

The Congress, through the Home Rule Act, set up a system of local self-government for the District of Columbia. Obviously, and of necessity, this separation of the District from direct federal tutelage had and still has myriads of indirect effects on existing federal laws and various federal rights and benefits. But this factor alone would appear not to be sufficient to provide the federal courts with jurisdiction; were it otherwise, the inevitable effect would be that the federal courts would have continuing jurisdiction with respect to a great many strictly local District of Columbia controversies. If the Home Rule Act is not a statute applicable exclusively to the District of Columbia, it is difficult to conceive what statute would be.

In short, the sensible construction of section 1364 is to hold that, absent extraordinary circumstances, it does not vest jurisdiction over District of Columbia Home Rule Act controversies in the federal courts, and the Court therefore concludes that defendants' jurisdictional point is well taken. See *Palmore v. United States*, 411 U.S. 389, 93 S.Ct. 1670, 36 L.Ed.2d 342 (1973); *Key v. Doyle*, 434 U.S. 59, 98 S.Ct. 280, 54 L.Ed.2d 288 (1977).[3]

The same result is reached by application of the doctrine of abstention. Federal courts will generally abstain when important issues of state and local policy are at stake. See *Colorado River Water Cons. District v. United States*, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976); *Alabama Public Service Commission v. Southern R. Co.*, 341 U.S. 341, 71 S.Ct. 762, 95 L.Ed. 1002 (1941); *Rizzo v. Goode*, 423 U.S. 362, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976). It can hardly be doubted that a case involving consideration of the District of Colum-

bia charter directly and intimately involves the District, its laws, and its policy. It should also be noted in this connection that Judge James Belson, then of the D. C. Superior Court, not long ago issued an opinion which exhaustively treated many of the issues raised by the instant action. *Barry v. Public Employee Relations Board*, Civil Action No. 15364–80.[4]

It is thus entirely appropriate that this Court abstain from deciding issues which in essence are matters of District of Columbia law and public policy and which have in large measure already been decided by the District of Columbia courts.

## II

In order to avoid unnecessary delay, the Court has also considered the substance of plaintiffs' claims, and it finds them to be without merit.

Plaintiffs' basic contention is that under sections 204(g) and 713(d) of the Home Rule Act they are entitled to enjoy the status of federal employees even though they and their functions were transferred to the District of Columbia government. This position defies not only the obvious purpose of the Act but also its statutory language and history.

The Home Rule Act envisioned a three-stage process: (1) the transfer in July 1974 of certain federal functions to the District of Columbia, (2) the transfer in January 1975 of District of Columbia functions to an elected Mayor and City Council, and (3) the enactment by the new government of its own personnel system. It is clear that during the first two stages, federal employees were to retain their prior

---

3. The constitutional questions raised by plaintiffs are wholly insubstantial and do not independently support federal court jurisdiction. See note 14 *infra*. There is likewise no occasion for the exercise of pendent jurisdiction, since the claims based on the Home Rule Act clearly predominate in terms of the scope of the issues raised, the proof, and the remedies sought. See *United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

4. In that case, the court held that under section 422(3) of the Home Rule Act, D. C. employees were subject to local personnel laws and not entitled to the federal personnel raise. The court also decided that Department of Housing employees whose rights were governed by section 713(d) or 422(3) of the Act were not entitled to the benefit of federal personnel laws.

Civil Service rights;[5] it is equally clear that they were intended thereafter to be subject to the District's own personnel system.

Section 422(2) of the Act provides that "all actions affecting . . . personnel . . . shall . . . until legislation is enacted by the Council . . . establishing a permanent District government merit system . . . continue to be subject . . . to section 713(d) of this Act. . . ." Plaintiffs' contention that section 713(d) survived the enactment by the D. C. City Council of a local personnel system flies directly in the face of this language.

As for section 204(g), its legislative history indicates that former Department of Labor employees were intended to be treated just like the Redevelopment Land Agency and the National Capital Housing Authority employees who were being transferred simultaneously. Plaintiffs' suggestion that they were somehow, and for no apparent good reason, singled out for special status not accorded to anyone else, is supported only by a tortured reading of the relevant statutory law and history and is wholly unpersuasive. Indeed, both House Report No. 93–1201, and the testimony of Leo Pellerzi, General Counsel of the American Federal of Government Employees, before the House Committee on the District of Columbia,[6] suggest that all transferred federal employees were to be accorded the status of District employees, not merely those of certain federal agencies.[7] In brief, the statute itself fully supports the view that plaintiffs are not entitled to enjoy the rights and benefits of federal employees long after the transfer of the personnel authority from the federal government to the District has taken place.[8]

The lack of reasonableness of plaintiffs' claim is demonstrated by its practical implications. The crux of their grievance is that they were not granted the 9.1 percent pay increase granted to federal employees but only the 5 percent increase awarded to District employees.[9] As indicated, plaintiffs go so far as to assert that they are even now [10] entitled to reinstatement in the U. S. Department of Labor (although their positions no longer exist) or to priority consideration for any and all vacancies that may arise in that department or anywhere else in the federal service. It is difficult to believe that when Congress provided that certain employees being transferred to the District of Columbia would retain various rights, benefits, and privileges, it intended that such employees would in perpetuity enjoy pay, reduction-in-force, and similar rights not available to other District employees.[11] The far more reasonable and logical inference is that Congress intended that these rights would be available during the transition period, but that ultimately the employees would be integrated into the District of

5. See Summary of Home Rule Act, published by the House Committee on the District of Columbia, February 8, 1974, at p. 9.

6. June 26, 1974, hearings of the House Committee on the District of Columbia, 93rd Cong., 2d Sess.

7. *I.e.*, the Redevelopment Land Agency and the National Capital Housing Authority.

8. Section 422(3) provides only that the D.C. personnel system benefits must be at least equal only to the benefits the incumbent employees had "immediately prior to the effective date" of the establishment of the District's permanent merit system—not to the benefits provided to federal employees thereafter. On the same basis, section 713(d) protects plaintiffs only from the deprivation of rights, benefits, and privileges held prior to their transfer to the District personnel system—not from the denial of future federal benefits.

9. It may be noted that District of Columbia benefits are not in all respects inferior to the federal benefits the plaintiffs had prior to their transfer. For example, the District allows collective bargaining on compensation, a benefit not available to federal employees.

10. There is a serious question whether, in any event, the statute of limitations has not run at least with respect to some of plaintiffs' claims which arose when plaintiffs were separated from the federal service in 1974. See 28 U.S.C. § 2401(a).

11. Clearly, section 204(f) transferred plaintiffs to the District of Columbia, and they are therefore now employees of the District.

Columbia personnel system in all of its aspects.[12]

 For these reasons,[13] the Court concludes that plaintiffs' statutory argument is without merit,[14] and the action accordingly must be dismissed.[15]

---

**12.** Full control of government personnel is an indispensable aspect of local governmental power. *National League of Cities v. Usery*, 426 U.S. 833, 96 S.Ct. 2465, 49 L.Ed.2d 245 (1976).

**13.** Although the Court has not, in this Memorandum, explicitly addressed all of the issues raised by plaintiffs, all of them have been considered.

**14.** Plaintiffs also claim that their transfer to the District government deprived them of constitutional rights to the same pay increase as that granted to federal employees. That argument, however, depends upon the premise that by 1974 plaintiffs had acquired a vested right to all future pay increases granted to federal employees by the Congress or the President, including the 9.1 percent pay raise awarded for fiscal year 1981. Clearly there was no such vesting. See *American Federation of Government Employees v. Campbell*, 659 F.2d 157 (D.C. Cir. 1980); see also, *Perry v. Sinderman*, 408 U.S. 593, 601, 92 S.Ct. 2694, 2699, 33 L.Ed.2d 570 (1972); *Local 2855, AFGE v. United States*, 602 F.2d 574 (3rd Cir. 1979).

**15.** The claims against the federal defendants cannot survive the Court's findings with respect to plaintiffs' principal jurisdictional and substantive claims.