Carolyn THOMAS, et al., Appellants

v.

Marion BARRY, et al.

No. 82–1920.

United States Court of Appeals,
District of Columbia Circuit.

Argued April 22, 1983.
Decided March 2, 1984.

Ralph J. Temple, with whom Jack I. Heller, Washington, D.C., was on the brief, for appellants.

Charles L. Reischel, Deputy Corp. Counsel, D.C., with whom Judith W. Rogers, Corp. Counsel, D.C., and John H. Suda, Asst. Corp. Counsel, D.C., Washington, D.C., were on the brief, for appellees Barry and Donaldson.

Robert C. Seldon, Asst. U.S. Atty., Washington, D.C., with whom Stanley S. Harris,

U.S. Atty., Washington, D.C., at the time the brief was filed, Royce C. Lamberth, R. Craig Lawrence, and Michael J. Ryan, Asst. U.S. Attys., Washington, D.C., were on the brief, for Federal appellees.

Before WALD and SCALIA, Circuit Judges, and BAZELON, Senior Circuit Judge.

Opinion for the Court filed by BAZELON, Senior Circuit Judge.

BAZELON, Senior Circuit Judge:

Appellants challenge their transfer from the U.S. Department of Labor to the District of Columbia Department of Employment Services. They seek an injunction which either would reinstate them to the federal competitive service or would grant them identical rights, benefits, and privileges. The district court dismissed their action holding: (1) that federal jurisdiction was lacking; and (2) that the employees had no entitlement to federal civil service benefits.[1] We reverse the district court's jurisdictional holding but affirm its dismissal on the substantive issue.

## I. BACKGROUND

This appeal arises from a district court order, on cross-motions for summary judgment, dismissing a class action suit on behalf of approximately 250 former employees of the United States Department of Labor (DOL). The suit against both federal and District of Columbia officials chal-

lenges appellants' transfer from the federal to the District government under section 204 of the District of Columbia Self-Government and Governmental Reorganization Act (the Home Rule Act).[2]

The Home Rule Act called for a multistage transfer of operations from the federal to the District government. Pursuant to the Act, all local functions, records, and funds of the DOL's District of Columbia Manpower Administration (DCMA) were transferred to the District of Columbia on July 1, 1974. Those affected were career employees in the United States competitive service. In January 1975, the District of Columbia functions were transferred to an elected Mayor and District Council. The Home Rule Act required the Council to enact its own personnel system no sooner than one year but no later than five years after the Act took effect.[3] It is uncontested that the former DOL employees retained their civil service rights prior to the enactment of the new personnel system.[4] The dispute concerns the appellants' status subsequent to the Council's enactment of the new system.

■ The District's new personnel law took effect on January 1, 1980.[5] On August 29, 1980, the President sent his report to Congress proposing a 9.1 percent pay raise to federal competitive service employees.[6] One month later, the District of Columbia Mayor sent the Council a proposed 5 percent pay increase for District employees. On December 17, 1980, aware that

1. *Thomas v. Barry*, 543 F.Supp. 801 (D.D.C. 1982).

2. P.L. 93–198, 87 Stat. 774 (1973).

3. HOUSE COMM. ON THE DISTRICT OF COLUMBIA, 93D CONG., 1ST SESS., SUMMARY OF MAJOR PROVISIONS OF THE 1973 HOME RULE ACT, AS AMENDED 9 (Comm. Print 1974), Joint Appendix (J.A.) 118, 129.

4. *Id.*

5. The District of Columbia Comprehensive Merit Personnel Act of 1978, D.C.Law 2–139, 2 D.C. Code §§ 1–601.1 to 1–637.2 (1981). The new personnel law was not enacted within the five year period prescribed by the Home Rule Act. Appellants, however, have not based their chal-

lenge on this delay. We have not found it necessary to address this issue in resolving appellants' claim. The general rule is that "[a] statutory time period is not mandatory unless it *both* expressly requires an agency or public official to act within a particular time period *and* specifies a consequence for failure to comply with the provision." *Fort Worth National Corp. v. Federal Savings and Loan Ins. Corp.*, 469 F.2d 47, 58 (5th Cir.1972) (emphasis added); *see Maryland Casualty Co. v. Cardillo*, 99 F.2d 432, 434 (D.C.Cir.1938); *Diamond Match Co. v. United States*, 181 F.Supp. 952, 958–59 (Cust.Ct. 1960).

6. This was the final action required by the Federal Pay Comparability Act, 5 U.S.C. §§ 5301–5308 (1982).

they would receive the smaller District pay increase, the former DOL employees filed suit.

## II. FEDERAL QUESTION JURISDICTION

### A. *28 U.S.C. § 1364*

■ Appellants claim that this case, brought under the Home Rule Act, is within this court's federal question jurisdiction.[7] 28 U.S.C. § 1364, however, excludes all laws "applicable *exclusively* to the District of Columbia"[8] from the body of federal law. The district court held that the Home Rule Act applied exclusively to the District of Columbia and consequently could not provide the basis for the exercise of federal question jurisdiction. We cannot agree.

Although the Home Rule Act does apply to the District of Columbia, it does not do so exclusively. Many of the Act's sections apply directly to the federal not the District government. Section 204(a) of the Act, for example, transfers certain functions from the United States Secretary of Labor to the District of Columbia Commissioner, while prescribing the type of relationship the Secretary is to maintain with the Commissioner.[9] Subsection (d) of section 204 transfers certain functions away from the Secretary of Labor and the Director of Apprenticeship, another federal official, and abolishes the latter position entirely within the federal system.[10] Other sections of the Act similarly allocate functions between the federal and District governments.[11]

The Home Rule Act is thus a hybrid statute. Its impact extends beyond the narrow sphere of the District of Columbia to various federal employees and to the actual structure of the Department of Labor. In *Key v. Doyle,* 434 U.S. 59, 98 S.Ct. 280, 54 L.Ed.2d 238 (1977), the Supreme Court equated exclusively local provisions of the D.C.Code to laws "enacted by state and local governments having plenary power to legislate for the general welfare of their citizens."[12] Section 204 of the Home Rule Act is not such a provision. A state or local statute cannot direct the federal government to affect transfers or to abolish positions altering its structure in the manner required by section 204.

### B. *Abstention*

■ Appellees claimed and the district court held that the doctrine of abstention should be applied in this case. Federal courts may abstain from exercising jurisdiction where important issues of state and local policy are at stake.[13] We decline to do so in this case.[14] The Supreme Court has held:

> Abstention from the exercise of federal jurisdiction is the exception, not the rule. "The doctrine ... is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it."[15]

---

7. 28 U.S.C. § 1331 (1976 & Supp. V 1981).

8. 28 U.S.C. § 1364 (Supp. V 1981) (emphasis added).

9. D.C.Code, § 36–701 (1981).

10. *Id.* § 36–406 (1981).

11. Subsection (e) transfers additional functions relating to the processing of claims away from the Secretary. Subsection (f) authorizes the transfer of personnel, property, records, and unexpended balances from the Secretary to the Commissioner. In addition, it requires the Director of the Federal Office of Management and Budget to make the determination regarding these specific transfers.

12. 434 U.S. at 68 n. 13, 98 S.Ct. at 285 n. 13; *Palmore v. United States,* 411 U.S. 389, 397–98, 93 S.Ct. 1670, 1676, 36 L.Ed.2d 342 (1973).

13. *See Colorado River Water Conservation District v. United States,* 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976).

14. The district court held that abstention was appropriately based, in part, on its reading of *Barry v. Public Employee Relations Board,* Civil Action No. 15364–80, a related District of Columbia Superior Court case. Our own construction of *Barry,* as well as the District of Columbia Court of Appeals' decision in the same case do not support the district court's holding. Federal issues were neither briefed nor argued in those cases. *American Federation of Government Employees v. Barry,* 459 A.2d 1045 (D.C.1983).

15. *Colorado River Water Conservation District v. United States,* 424 U.S. 800, 813, 96 S.Ct. 1236, 1244, 47 L.Ed.2d 483 (1976) (quoting *County of Allegheny v. Frank Mashuda Co.,* 360 U.S. 185,

The presumption against abstention has special relevance here. "This court has never precisely defined the extent to which the policy of allowing state courts to decide unsettled issues of state law applies to that unique jurisdiction, the District of Columbia." [16]

The issues in this case, moreover, are by no means limited to local District of Columbia policy. Federal rights are implicated which are appropriate for resolution in a federal forum.[17] This also counsels against abstention in the instant appeal.

### III. RETENTION OF CIVIL SERVICE RIGHTS

#### A. The Statutory Basis

■ Appellants claim that sections 204(g) and 713(d) of the Home Rule Act entitle them to continuing status as federal competitive service employees.[18] Section 204 created a local agency providing the District of Columbia with its own public employment service. Subsection (g) specifies that employees transferred pursuant to this section shall retain the competitive service rights they held prior to the transfer.[19] Section 713 is concerned with the transfer of personnel, property, and funds. Subsection (d) provides that employees being transferred shall not by reason of the transfer be deprived of the civil service rights, benefits, and privileges they held prior to the transfer. In addition, section 422(3) states that the new District of Co-

lumbia personnel system shall provide to the employees benefits at least equal to those which they enjoyed immediately prior to the enactment of the new system.[20] The legislative history of the Home Rule Act as well as the statutory language and history, however, indicate that appellants are not entitled to the relief they seek.

#### B. The Legislative History of the Home Rule Act

In 1970, Congress established the Nelson Commission to study the organization of the government of the District of Columbia.[21] Its report, issued in August, 1972, recommended the transfer of various federal agencies to the District government along with a "transfer of those purely local functions of the District of Columbia Manpower Administration." [22] The Commission explained:

DCMA carries out programs and activities which are normally state and local functions. A general principle of organization adopted by the Commission is that programs which are predominantly for the benefit of District citizens should be an integral part of the District Government, so that the District can exercise the necessary leadership and assure coordination of basic services.[23]

Recommendations were also made with respect to the District's personnel administration. The Commission found that "the

---

188–189, 79 S.Ct. 1060, 1062–63, 3 L.Ed.2d 1163 (1959)).

**16.** *Spivey v. Barry,* 665 F.2d 1222, 1229 (D.C.Cir. 1981).

**17.** In connection with the federal nature of appellants' claim, see *Bush v. Lucas,* 647 F.2d 573, 576–77 (5th Cir.1981), *aff'd,* ── U.S. ──, 103 S.Ct. 2404, 76 L.Ed.2d 648 (1982).

**18.** Section 204(g) states:
  Any employee in the competitive service of the United States transferred to the government of the District under the provisions of this section shall retain all the rights, benefits, and privileges pertaining thereto held prior to such transfer.
  Section 713(d) states:
  No officer or employee shall, by reason of his transfer to the District government under this

Act or his separation from service under this Act, be deprived of any civil service rights, benefits, and privileges held by him prior to such transfer or any right of appeal or review he may have by reason of his separation from service.

**19.** H.R.REP. No. 482, 93d Cong., 1st Sess. 7 (1973).

**20.** D.C.Code, § 1–242(3) (1981).

**21.** P.L. 91–405, 84 Stat. 845 (September 22, 1970).

**22.** H.R.Doc. No. 317, 92d Cong., 2d Sess. 85 (1972).

**23.** *Id.* at 285.

District's personnel management lacks unity and firm central direction. At least 14 classification and/or pay systems and 6 retirement systems are in effect...." [24] It called for the "creation of a new District personnel and management system, largely municipal in character and covering as many District employees as possible." [25] The following year, Congress began work on what became the Home Rule Act.[26]

Congress ultimately agreed with the Nelson Commission that the District should have an autonomous personnel system. It required, however, that the local District Government rather than the Congress devise the new system.[27] It intended that "[t]he local Council, not the Congress, would be required to settle pay and labor disputes...." [28] It is against this legislative backdrop that we construe sections 204(g), 713(d), and 422(3) of the Home Rule Act.

## C. Retention of Civil Service Benefits During the Transfer Period

No question exists that the former DOL employees were to retain their competitive service benefits until such time as the District of Columbia implemented its own personnel system. The summary of the Home Rule Act prepared by the Committee on the District of Columbia explains:

[T]he Act clarifies and guarantees that an employee will not lose his civil service rights, such as leave, salary, retirement, veteran's preference, promotion status, etc., during the transfer period, ....[29]

Nothing in the legislative history, however, states that these rights were to continue after the transition period. To read the absence of an express time limit on these rights as a continuing grant of federal benefits is to read too much into statutory silence.

The legislative history of section 713(d) reinforces the conclusion that these were merely interim rights. In explaining what "rights, benefits, and privileges" transferred employees would enjoy, Congressman Brock Adams, one of the Home Rule Act's architects, stated that the grant of continued federal rights

cannot be changed ... unless we put together and pass a new complete personnel system which would of course supersede this.... That gets us up through keeping the government intact until the new government comes in.[30]

This new personnel system is, of course, now in effect. With its enactment, section 713(d) ceased to apply to the transferred employees.[31]

Parts of the statute do appear somewhat ambiguous on their face. When the statute is read in its entirety together with

---

**24.** *Id.* at 52.

**25.** *Id.*

**26.** The House held hearings on the Nelson Committee's Report, commencing in February, 1973. *See D.C. Government Organization, Hearings before the Subcommittee on Government Operations of the Committee on the District of Columbia*, 93d Cong., 1st Sess. Part I (1973).

**27.** H.R.REP. No. 482, 93d Cong., 1st Sess. 5 (1973), *reprinted in* Home Rule for the District of Columbia 1974: Background and Legislative History of H.R. 9056, H.R. 9682, and Government Reorganization Act, House Committee Print, 93d Cong., 2d Sess. at 1445 (1974) [hereinafter Home Rule History].

**28.** H.R.REP. No. 482, *supra* note 27, at 2, Home Rule History *supra* note 27, at 1442.

**29.** HOUSE COMM. ON THE DISTRICT OF COLUMBIA, 93D CONG., 1ST SESS., SUMMARY OF MAJOR PROVISIONS OF THE 1973 HOME RULE ACT, AS AMENDED 9 (Comm. Print 1974), J.A. 118, 129.

**30.** STAFF OF HOUSE SUBCOMM. ON GOVERNMENT OPERATIONS OF THE COMM. ON THE DISTRICT OF COLUMBIA, 93d Cong., 1st Sess., MARKUP OF SUBCOMM. DISCUSSION DRAFT No. 2, 17 (Comm. Print 1974).

**31.** D.C.Code, § 1–242(3) (1981). Section 422(3) provides only that the D.C. personnel system benefits must be at least equal only to the benefits the incumbent employees had "immediately prior to the effective date" of the establishment of the District's permanent merit system—not to the benefits provided to federal employees thereafter. On the same basis, section 713(d) protects plaintiffs only from the deprivation of rights, benefits, and privileges held prior to their transfer to the District personnel system— not from the denial of future federal benefits.

relevant portions of the legislative history, however, the congressional intent is clear. One of the major objectives in the Home Rule Act was to reorganize a fragmented local government in an efficient manner. It sought to create a unitary, more autonomous system, not to continue various parallel systems. Congress did intend to provide interim protection by assuring that the existing federal system of benefits would continue until the District government had developed an adequate alternative. Once the District system was in place, these protections became unnecessary. If maintained, they would have frustrated the congressional purpose of creating a single, autonomous personnel system. With the establishment of the new system, the former federal DOL employees became District employees subject to the new District personnel scheme. They did not retain their federal status nor continue to be entitled to civil service rights. Appellants are

now completely integrated into the District of Columbia personnel system.[32]

## IV. CONCLUSION

Because we find that the Home Rule Act is not exclusively a local statute, we reverse the district court's dismissal for lack of federal question jurisdiction. We agree with the district court, however, that appellants are neither federal employees nor entitled to the continuation of federal benefits. Accordingly, we affirm the district court's dismissal on substantive grounds.

*So ordered.*

**32.** Appellants also claim that their transfer to the District government deprived them of constitutional rights to the same pay increase as that granted to federal employees. That argument, however, depends upon the premise that by 1974 plaintiffs had acquired a vested right to all future pay increases granted to federal employees by the Congress or the President, includ-

ing the 9.1 percent pay raise awarded for fiscal year 1981. Clearly there was no such vesting. *See American Federation of Government Employees, AFL–CIO v. Campbell,* 659 F.2d 157 (D.C.Cir.1980), *cert. denied,* 454 U.S. 820, 102 S.Ct. 103, 70 L.Ed.2d 92 (1981); *see also Local 2855, AFGE v. United States,* 602 F.2d 574 (3d Cir.1979).