TEAMSTERS LOCAL UNION 1714, et al., Appellant,

v.

PUBLIC EMPLOYEE RELATIONS BOARD, Appellee.

DISTRICT OF COLUMBIA, Appellant,

v.

PUBLIC EMPLOYEE RELATIONS BOARD, Appellee.

Nos. 89–317, 89–338.

District of Columbia Court of Appeals.

Argued Feb. 5, 1990.

Decided Aug. 22, 1990.

John R. Mooney, with whom Kathleen A. Murray and Elizabeth J. Head, Washington, D.C., were on brief, for Teamsters Local 1714.

Susan S. McDonald, Asst. Corp. Counsel, with whom Herbert O. Reid, Sr., Acting Corp. Counsel, and Charles L. Reischel, Deputy Corp. Counsel, Washington, D.C., were on brief, for District of Columbia.

Christopher A. Hart, Washington, D.C., for appellee Public Employee Relations Bd.

Before ROGERS, Chief Judge, and STEADMAN and FARRELL, Associate Judges.

STEADMAN, Associate Judge:

Both the governing statute and implementing regulations require that a decision on proposed disciplinary action against ca-reer District of Columbia employees be rendered within forty-five days of notice of such proposed action. This appeal involves the question of the effect of a failure to comply with this time provision. We remand the case for the Public Employee Relations Board to further consider and amplify its reasoning with respect to this question.

I

On March 8, 1986, Jean Harrod, a correctional officer at the District of Columbia Department of Corrections (the "Department"), failed to report to a "shakedown," or search, of inmates as requested by her supervisor. On April 8, 1986, the Acting Administrator of the Department approved a charge of insubordination against Harrod and recommended that she be given a five-day disciplinary suspension. On April 24, the Administrator sent an Advance Notice of Proposed Suspension to Harrod, which she received on May 1. The Notice informed Harrod of her right to file a reply, which Harrod did not exercise. On July 1, the Department issued its Final Decision ordering suspension, to be effective from July 22 to July 26.

On July 20, Harrod filed a grievance[1] stating, *inter alia*, that the Department had failed to issue its Final Decision within forty-five days of having issued its Advance Notice of Proposed Suspension, as provided in the District of Columbia Code and sections of the District of Columbia Personnel Manual, and that the disciplinary action should therefore be removed from Harrod's personnel folder. On July 23, the Department's Director responded to Harrod by letter and denied the grievance. Thereupon, Teamsters Local Union No. 1714 (the "Union"), the union representing employees of the District of Columbia Department of Corrections, including Harrod, requested arbitration of the grievance as provided for by the collective bargaining agreement.

---

1. The grievance was not designated as part of the record on appeal. We are not therefore in a position to know Officer Harrod's precise alle-gations and we rely primarily therefore on the arbitrator's recounting of them.

Relying on a section of the District of Columbia Comprehensive Merit Personnel Act, D.C.Code §§ 1–601.1 to 1–637.2 (1987) (the "CMPA"), and regulations promulgated pursuant thereto in the District of Columbia Personnel Manual, the Union argued to the arbitrator that the Department was barred from ordering discipline since it failed to meet a forty-five-day deadline contained in those provisions. Section 1–617.3 of the Code provides:

(a) (1) An individual in the Career and Educational Services against whom an adverse action is recommended in accordance with this subchapter is entitled to reasons, in writing, and to the following:

(A) Notice of the action sought and of charges preferred against him or her;

(B) A copy of the charges;

(C) A reasonable time for filing a written answer to the charges, with affidavits; and

(D) *A written decision on the answer within 45 calendar days of the date that charges are preferred.*

D.C.Code § 1–617.3 (1987) (emphasis added). Section 1604.38 of the District of Columbia Personnel Manual provides:

The [disciplinary] decision shall be rendered no more than forty-five (45) days from the date of delivery of the notice of proposed corrective or adverse action; provided that the period may be extended when the employee does the following:

(a) Requests and is granted an extension of the time allotted for answering the notice of proposed action; or

(b) Agrees to an extension of time requested by the agency.

District of Columbia Personnel Manual § 1604.38 (1987).

In a decision of September 1, 1987 (the "award"), the arbitrator concluded that the Department's failure to meet the 45–day deadline did "not require an *automatic* forfeiture of the Agency's right to proceed with the discipline" (emphasis in original). "[I]n the absence of explicit statutory or regulatory intent," the arbitrator wrote,

the Arbitrator properly cannot infer that it was intended either by the statute or by the regulation which implemented the statute that the drastic result of forfeiture of the Agency's right to discipline was to be automatic solely because the agency had failed to act within the 45–day period, wholly without regard to any of the attendant circumstances.

The arbitrator went on to state that "the employee has the burden of demonstrating actual or, at least, potential harm in terms of whether, had there been no procedural error, the Agency would not have decided to proceed with the discipline." Because the employee "has not asserted that any actual harm was caused by the procedural error," the arbitrator rejected the Union's "procedural argument" and rendered a decision against Harrod on the merits.

On September 28, 1987, the Union filed an Arbitration Review Request with the Public Employee Relations Board (the "PERB" or the "Board"), the agency entrusted with review of arbitration decisions affecting public employees of the District of Columbia. In a decision of November 2, 1988, the Board affirmed that part of the award that held that the Department's failure to meet the forty-five-day deadline did not "automatically forfeit the Agency's right to implement a decision," that is, that the forty-five-day rule was directory rather than mandatory. The Board reversed that part of the award, however, that placed on the employee or the Union the "burden of establishing that the [employer] was substantially prejudiced" by the Department's untimely action. In particular, the Board relied on *Vann v. District of Columbia Board of Funeral Directors & Embalmers*, 441 A.2d 246, 248 (D.C.1982), for the proposition that where an agency has failed to meet a statutory deadline "the agency bears the burden of demonstrating that its delay did not substantially prejudice the complaining party." The Board therefore concluded that the arbitrator's allocation of the burden to the employee was "contrary to law." [2]

2. The Board concluded also that such a burden allocation was "contrary to public policy." Dis-

Both the Union and the District of Columbia petitioned the Superior Court of the District of Columbia for review of the PERB decision, as provided for in D.C.Code section 1–618.13(c) (1987). The Superior Court dismissed the petitions, stating that, "for reasons stated on the record," the PERB decision was "in accord with applicable law, and is therefore not arbitrary and capricious, not an abuse of discretion, and not clearly erroneous as a matter of law." Both parties renewed their appeals to us.

## II

▓▓▓▓ "[A]lthough this is an appeal from a review of agency action by the Superior Court rather than a direct appeal to us, we review the administrative decision as if the appeal had been heard initially in this court." *Public Employee Relations Bd. v. Washington Teachers' Union Local 6,* 556 A.2d 206, 207 (D.C.1989). As provided for by the CMPA, the Superior Court reviews the PERB's factual findings to "determine if [they are] supported by substantial evidence and [are] not clearly erroneous as a matter of law." D.C.Code § 1–605.2(12) (1987).[3] This standard applies to us as well. *Washington Teachers' Union Local 6, supra,* 556 A.2d at 207 n. 2. As to the PERB's legal conclusions, we defer to the PERB's interpretation of the CMPA and will not reverse unless the interpretation is unreasonable in light of the prevailing law or inconsistent with the statute. *Id.* at 207; *District of Columbia Dep't of Corrections v. Teamsters Union Local No. 246,* 554 A.2d 319, 323 (D.C. 1989). However, "we are not obliged to stand aside and affirm an administrative determination which reflects a misconception of the relevant law or a faulty application of the law." *Thomas v. District of Columbia Dep't of Labor,* 409 A.2d 164, 169 (D.C.1979). *See Phillips Petroleum Co. v. FERC,* 253 U.S.App.D.C. 211, 218, 792 F.2d 1165, 1172 (1986) ("[w]here ... an agency construction is not based on the agency's own judgment, but rather on an erroneous view of the law, the construction cannot be sustained"). Similarly, we cannot affirm an agency decision if "we cannot confidently ascertain either the precise legal principles on which the agency relied or its underlying factual determinations." *Long v. District of Columbia Dep't of Employment Servs.,* 570 A.2d 301, 305 (D.C.1990). Nor may we affirm on a ground not relied on by the agency or substitute our judgment for that of the agency. *Jones v. District of Columbia Dep't of Employment Servs.,* 519 A.2d 704, 709 (D.C.1987); *SEC v. Chenery Corp.,* 318 U.S. 80, 95, 63 S.Ct. 454, 462, 87 L.Ed. 626 (1943) (*Chenery I*).

A. *The Agency's Conclusion That the Forty-five-day Rule Is Directory Rather Than Mandatory.*

The entirety of the PERB's ruling on whether the forty-five-day rule is directory or mandatory was as follows:

It has been established in the District of Columbia that a "statute specifying a time within which a public official is to perform an official act regarding the rights and duties of others is directory unless the nature of the act to be performed, or the phraseology of the statute, is such that the designation of time must be considered a limitation of the power of the officer." *JBG Properties, Inc. v. D.C. Office of Human Rights,* 364 A.2d 1183, 1185 (D.C.1976); *Accord, Wis-*

---

trict of Columbia Code section 1–605.2(6) provides, in pertinent part, that arbitral awards "may be reviewed only if ... the award on its face is contrary to law and public policy." The District and Union conceded at oral argument however, that they had failed to preserve for appeal the issue of the PERB's standard of review of an arbitrator's award. Hence, we do not address the perhaps difficult question of what the legitimate sources of "public policy" are in the context of an agency review of an arbitral award.

3. We understand this section to provide for a standard of review for PERB factual determinations only. The phrases "supported by substantial evidence" and "not clearly erroneous" are ordinarily associated with review of facts. 5 K. DAVIS, ADMINISTRATIVE LAW TREATISE § 29.22, at 437 (2d ed. 1984). As discussed below, our cases involving review of PERB decisions have proceeded on the ground that the PERB's legal conclusions are subject to the ordinary amount of deference given to agencies entrusted with implementation of statutes.

*consin Avenue Nursing Home v. D.C. Commission on Human Rights,* 527 A.2d 282 (D.C.1987); and *Vann v. D.C. Board of Funeral Directors and Embalmers,* 441 A.2d 246 (D.C.1982). For this reason the Board rejects the Union's contention that Sec. 1–617.3(a)(1)(D) of the D.C. Code requires an agency to rescind a personnel action if the final decision on any action is not issued within the specified time. As in *JBG Properties, Inc.,* 364 A.2d at 1185, the regulations in this case do not contain a specific limitation curtailing the power of the agency for failure to act within a certain time period. Therefore, the regulations, which require [the Department of Corrections] to act within a specified time, are directory rather than mandatory.

As evidenced by this decision, the PERB appears largely to have felt constrained by our cases to find that the forty-five-day rule was directory rather than mandatory because the formulations of the rule do not specify the consequences of noncompliance. The PERB expressly articulated this sense of constraint in connection with the "regulations," presumably referring to Personnel Manual section 1604.38, stating that "the regulations ... do not contain a specific limitation curtailing the power of the agency for failure to act within a certain time period. Therefore, the regulations ... are directory rather than mandatory."

Such a mechanistic approach reflects a misreading of our cases. It is true that there is a presumption that a statute imposing a time limit within which a public official must act which does not specify the consequences of noncompliance is meant to be directory. *Vann, supra,* 441 A.2d at 248; *JBG Properties Inc. v. District of Columbia Office of Human Rights,* 364 A.2d 1183, 1185 (D.C.1976) (citation omit-

ted). *Cf. Morris v. District of Columbia Dep't of Employment Servs.,* 530 A.2d 683, 684 n. 3 (D.C.1987) (quoting *Brock v. Pierce County,* 476 U.S. 253, 260, 106 S.Ct. 1834, 1839, 90 L.Ed.2d 248 (1986), for the proposition that "where there are less drastic remedies available for failure to meet a statutory deadline, courts should not assume that [the legislature] intended the agency to lose its power to act"); *Thomas v. Barry,* 234 U.S.App.D.C. 378, 379 n. 5, 729 F.2d 1469, 1470 n. 5 (1984) ("[t]he general rule is that '[a] statutory time period is not mandatory unless it *both* expressly requires an agency or public official to act within a particular time period *and* specifies a consequence for failure to comply with the provision'" (emphases in original)). However, this presumption is not conclusive. As we said in *JBG Properties, supra,* 364 A.2d at 1185, the "nature of the act to be performed" and the "phraseology of the statute" must be examined to determine whether "the designation of time must be considered a limitation of the power of the officer" (quoting 2A Sutherland, Statutory Construction § 57.19, at 445 (3d ed. 1973)). Thus, since the PERB's decision "reflects a misconception of the relevant law or a faulty application of the law," *Thomas v. District of Columbia Dep't of Labor, supra,* 409 A.2d at 169, we must remand for the agency to further evaluate the statute and regulation.[4]

As the agency recognized as having "'special competence'" to decide matters within its expertise, *Teamsters Union Local No. 246, supra,* 554 A.2d at 323 (citation omitted), the PERB is entrusted in the "first instance" with responsibility to interpret the CMPA. *Hawkins v. Hall,* 537 A.2d 571, 575 n. 8 (D.C.1988) (internal quotation marks omitted).[5] Entailed within

---

**4.** Appellant contends that the forty-five-day rule must be mandatory since section 1604.38 of the District of Columbia Personnel Manual, which enumerates only two conditions under which the forty-five-day period may be extended, would otherwise be rendered meaningless. We note that this interpretation would not necessarily be compelled. For example, even if the rule were understood to be directory, section 1604.38 might have a practical effect: an extension

brought about under either of the extension options in that section could be seen as a bar to any subsequent assertion of prejudice; a delay without an exercise of such an extension would permit an assertion of prejudice. In any event, the PERB should clarify on remand how the 45–day rule contained in the regulation relates to the statutory 45–day rule.

**5.** Thus, "we must sustain the agency's interpretation even if a petitioner advances another rea-

this responsibility is the requirement that the agency elaborate, at least to some extent, the reasoning underlying its interpretations. *See Williams–Godfrey v. District of Columbia Bd. of Elections & Ethics*, 570 A.2d 737, 739 (D.C.1990) (remand necessary where agency failed "to articulate with precision the rationale of its decision"); *Chenery I, supra*, 318 U.S. at 94, 63 S.Ct. at 462 ("the grounds upon which the administrative agency acted [must] be clearly disclosed and adequately sustained"). Although the PERB stated that the statute and regulations did not curtail the power of the agency to act, it provided slender reasoning for its conclusion. Fuller exposition will involve the familiar process of examining the precise statutory language, the legislative history and—particularly pertinent to the agency's acknowledged expertise—the purposes and policies to be served by the statute and the provision under consideration. *See SEC v. Chenery Corp.*, 332 U.S. 194, 207, 67 S.Ct. 1575, 1582, 91 L.Ed. 1995 (1947) (*Chenery II*) (recognizing importance of agency's "thorough examination of the problem, utilizing statutory standards and its own accumulated experience"); *Brock v. Pierce County*, 476 U.S. 253, 258, 106 S.Ct. 1834, 1838, 90 L.Ed.2d 248 (1986) (where agency official failed to meet statutory deadline, court must "examine carefully the statutory language and legislative history to determine whether Congress" intended the agency thereby to lose its power to act); 2A N. SINGER, SUTHERLAND STATUTORY CONSTRUCTION § 57.02, at 641 (4th ed. 1984) ("[t]he question whether a statutory provision has a mandatory or directory character is one of statutory construction. The same criteria applicable to decisions of other kinds of issues of statutory construction apply, i.e., the intent of the legislature or the manifested meaning of the statute"); *United States v. Montalvo–Murillo*, —— U.S. ——, 110 S.Ct. 2072, 2078, 109 L.Ed.2d 720 (1990) (Court considered "design and function," as well as legislative history, of Bail Reform Act of 1984 to conclude that

government's failure to comply with time provisions for bail hearings did not necessitate release of prisoner). And even if the statute is found to be directory, the PERB should similarly interpret the regulation to determine whether the agency has chosen to make the forty-five-day rule mandatory by promulgation of the regulation. *See supra* note 4.

### B. *The Prejudice Determination.*

■ Generally, even if a court or interpreting agency concludes that a statutory rule is directory, the analysis will not be at an end. A further inquiry into the particular facts of the case to determine whether the opponent of the noncomplying party will suffer any prejudice as a result of the noncompliance will still be necessary. In addition, courts or interpreting agencies must, where appropriate, also engage in a "balancing test to determine whether any prejudice to a party caused by agency delay is outweighed by the interests of another party or the public in allowing the agency to act after the statutory time period has elapsed." *Vann, supra*, 441 A.2d at 248. *See Wisconsin Avenue Nursing Home v. District of Columbia Comm'n on Human Rights*, 527 A.2d 282, 285 (D.C. 1987); *JBG Properties, supra*, 364 A.2d at 1186. Of course, if no prejudice is found, it is not necessary to reach the counterweight of the balance.

In this case, the PERB did not make a prejudice determination or engage in the balancing test set forth in *Vann, Wisconsin Avenue Nursing Home* and *JBG Properties*. Instead, it concluded that the arbitrator's allocation to Harrod or the Union of the burden of showing prejudice was "contrary to law and public policy" and therefore remanded to the arbitrator to make a prejudice finding in accordance with what the PERB viewed as the proper burden allocation. While the PERB properly determined that the delaying agency normally has the burden of *persuasion* as to the existence *vel non* of prejudice, *Wis-*

sonable interpretation of the statute or if we might have been persuaded by the alternate interpretation had we been construing the stat-

ute in the first instance." *Smith v. District of Columbia Dep't of Employment Servs.*, 548 A.2d 95, 97 (D.C.1988).

consin Avenue Nursing Home, supra, 527 A.2d at 287; Vann, supra, 441 A.2d at 248; JBG Properties, supra, 364 A.2d at 1187, it does not necessarily follow that a remand to the arbitrator on this issue should ensue. Although not bearing the ultimate burden of persuasion, the party benefited by the prejudice analysis may have the burden of pleading, or perhaps even initial production, on the issue of prejudice; that is, the potentially prejudiced party may at least have to assert in her grievance or response to the disciplinary action the existence and ground of prejudice, or initially produce evidence to support the assertion of prejudice. Cf. E. CLEARY, McCORMICK ON EVIDENCE § 337 (3d ed. 1984) ("Allocating the Burdens of Proof"). Here, the arbitrator specifically found that the employee "has not asserted that any actual harm was caused by the procedural error" and the PERB cited this finding. On remand, the PERB should explicate its view, and the basis thereof, with respect to such burdens of pleading or production and their relation to the burden of persuasion. Cf. Williams-Godfrey, supra, 570 A.2d at 739 (remand to agency to clarify "how the Board viewed the burden of proof, as distinct from the burden of coming forward with evidence").

Accordingly, the Superior Court Order is reversed with instructions to remand to the PERB for further proceedings consistent with this opinion.

*So ordered.*

FARRELL, Associate Judge, concurring:

I concur in the remand reluctantly for I do not believe it plausible that the legislature intended the 45-day rule to be mandatory rather than directory, if "mandatory" meant that the agency were foreclosed from disciplinary action by noncompliance without regard to whether the delay prejudiced the employee. In *Mannan v. District of Columbia Board of Medicine*, 558 A.2d 329 (D.C.1989), involving a proceeding to revoke a physician's license to practice medicine for willfully making or filing a false report, the physician argued that the revocation was invalid because the Board

had failed to render its decision within the sixty days after hearing mandated by D.C. Code § 2-3305.19(h) (1988). Although declining to address the issue on appeal because the physician had not raised it before the Board, we nevertheless opined:

[I]n view of the governmental interests at stake, § 2-3305.19(h) appears to be more in the nature of a precatory directive than a jurisdictional prerogative. Cf. Hughes [v. District of Columbia Dep't of Employment Servs.,] 498 A.2d [567,] at 571 n. 8 [D.C.1985] (citations omitted). See also Thomas v. Barry, 234 U.S.App.D.C. 378, 379 n. 5, 729 F.2d 1469, 1470 n. 5 (1984) (general rule that statutory time period is not mandatory unless it expressly requires agency to act within a particular time period *and* specifies a consequence for failure to comply) (citations omitted).

*Id.* at 334 (emphasis in original). We also cited *Harris v. District of Columbia Rental Hous. Comm'n*, 505 A.2d 66, 71 (D.C. 1986), for the principle that the proper remedy for forbidden delay in administrative proceedings is a court order expediting the same, *see* D.C.Code § 1-1510(a)(2) (1987).

"[T]he governmental interests at stake" would seem to me to dictate the same conclusion here. The adverse action procedures of the District of Columbia Comprehensive Merit Personnel Act apply to a vast range of public employees, many of whom—like members of the Department of Corrections—are involved directly with public safety, emergency response, and the like. The statute expressly permits discipline or removal for cause for conduct by employees in such trust positions that endangers the public welfare. Section 1-617.-1(d). To say that a failure to provide a written decision within 45 days when charges of this kind are brought strips the agency of power to impose corrective measures, without regard to identified prejudice to the employee, would be to emphasize the employee-protection aspects of the Personnel Act at great cost to its equally important purpose of "maintain[ing] an effective and responsive work force." D.C. Code § 1-601.2(7). I think the Board was quite right in implying (if it did not say so expressly) that the legislature did not in-

tend non-compliance with the 45–day rule to mean *per se* invalidation of agency action, but rather that the agency must be permitted to demonstrate "that its delay did not substantially prejudice the complaining party." *Vann v. District of Columbia Board of Funeral Directors,* 441 A.2d 246, 248 (D.C.1982).

In short, the Board's task should be an easy one of explaining to this court more fully that the statute it administers did not intend "that the drastic result of forfeiture of the Agency's right to discipline was to be automatic solely because the agency had failed to act within the 45–day period, wholly without regard to any of the attendant circumstances." Arbitrator's Award at 13. The Board's conclusion already is presumptively correct, for, like the Supreme Court, we should

> be most reluctant to conclude that every failure of an agency to observe a procedural requirement voids subsequent agency action, especially when important public rights are at stake. When, as here, there are less drastic remedies available for failure to meet a statutory deadline, courts should not assume that [the legislature] intended for the agency to lose its power to act.

*Brock v. Pierce County,* 476 U.S. 253, 260, 106 S.Ct. 1834, 1839, 90 L.Ed.2d 248 (1986).*

I agree with the court that, in the process, the Board should explain whether it means to distinguish between burden of persuasion and burden of pleading or production—in a case in which, even now, appellant has asserted no actual harm from the agency's delay.

---

* The Board also should have no difficulty explaining the difference between the two conditions on which extensions may be granted under section 1604.38 of the District of Columbia Personnel Manual and the rule permitting the agency to demonstrate lack of prejudice—thus preserving the validity of its action—when the 45–day rule has been violated, and thus in persuading us why the regulations do not impose greater restrictions than the statute on an agency's power to act.