# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

Argued November 5, 2018　　　　　Decided July 19, 2019

No. 17-7155

D.C. ASSOCIATION OF CHARTERED PUBLIC SCHOOLS, ET AL.,
APPELLANTS

v.

DISTRICT OF COLUMBIA, ET AL.,
APPELLEES

Appeal from the United States District Court
for the District of Columbia
(No. 1:14-cv-01293)

*Kelly P. Dunbar* argued the cause for appellants. With him on the brief were *Carl J. Nichols* and *Thomas C. Kost*.

*Jason Lederstein*, Assistant Attorney General, Office of the Attorney General for the District of Columbia, argued the cause for appellees. With him on the briefs were *Karl A. Racine*, Attorney General, *Loren L. AliKhan*, Solicitor General, and *Caroline S. Van Zile*, Deputy Solicitor General.

*John R. Hoellen* and *Lauren R.S. Mendonsa* were on the brief for *amicus curiae* Council of the District of Columbia in support of appellees.

*Roger E. Warin*, *Osvaldo Vazquez*, *Marcus Gadson*, and *Jonathan Smith* were on the brief for *amici curiae* Community Members and Organizations in support of defendants-appellees.

Before: HENDERSON, SRINIVASAN and MILLETT, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* SRINIVASAN.

SRINIVASAN, *Circuit Judge*: In 1996, Congress enacted the School Reform Act, which established parallel systems of traditional public schools and charter schools in the District of Columbia. The Act requires the District to fund the operating expenses of public and charter schools on a uniform, per-student basis. In this case, the D.C. Association of Chartered Public Schools contends that the District's school funding practices inadequately fund charter schools. The district court rejected the Association's claims. We conclude, though, that the district court lacked jurisdiction to hear this case.

I.

The Constitution's District Clause grants Congress the power "[t]o exercise exclusive Legislation in all Cases whatsoever, over [the] District [of Columbia]." U.S. Const. art. I, § 8, cl. 17. Pursuant to that Clause, Congress can delegate "legislative power" to the District. *District of Columbia v. John R. Thompson Co.*, 346 U.S. 100, 109 (1953). Congress did so in the District of Columbia Self-Government and Governmental Reorganization Act, Pub. L. No. 93-198, 87 Stat. 774 (1973) (codified as amended at D.C. Code § 1-201.01 *et seq.*)—also known as the Home Rule Act, or HRA—which sought to "relieve Congress of the burden of legislating upon essentially local District matters," *id.* § 102(a).

Congress, however, limited the District's power to legislate in certain respects. Of most relevance for our purposes, Congress barred the District from amending or repealing an Act of Congress that "is not restricted in its application exclusively in or to the District." *Id.* § 602(a)(3).

In 1996, Congress enacted the School Reform Act, Pub. L. No. 104-134, 110 Stat. 1321-107 (1996), which authorized the creation of charter schools in the District. The Act addresses the annual operating budgets for both traditional public schools and charter schools. It provides that the District "shall establish . . . a formula to determine the amount of . . . the annual payment to the Board of Education for the operating expenses of the District of Columbia public schools . . . [and] the annual payment to each public charter school for [its] operating expenses." *Id.* § 2401(b)(1). The "amount of the annual payment" for each school "shall be calculated by multiplying a uniform dollar amount . . . [by] the number of students" enrolled at the school. *Id.* § 2401(b)(2).

The District's uniform per-student funding level for both traditional public and charter schools is currently $10,658. *See* D.C. Code § 38-2903. But the District allocates certain additional funding to traditional public schools above the per-pupil amount (including for maintenance of facilities and for teacher pensions). The District also applies the per-pupil formula to traditional public schools and charter schools in a slightly different way: the District makes one annual payment to traditional public schools based on the prior year's enrollment, *see* D.C. Code § 38-2906(a), whereas for charter schools, the District makes quarterly payments that can be adjusted during the year if the actual enrollment turns out to differ from projected enrollment, *id.* § 38-2906.02(b)–(c).

4

The D.C. Association of Chartered Public Schools brought suit challenging the District's funding practices. The Association contends that the District underfunds charter schools relative to traditional public schools, in violation of the School Reform Act, the Home Rule Act, and the Constitution. The district court ruled for the District on all counts, and the Association now appeals.

II.

We do not reach the merits of the Association's claims because we conclude that the district court lacked jurisdiction over them. The Association contends that its claims under the School Reform Act, Home Rule Act, and Constitution fall within the district court's original jurisdiction over claims arising under federal law. *See* 28 U.S.C. § 1331. None of those claims, however, arises under federal law within the meaning of the federal-question statute. We thus vacate the district court's judgment and remand for dismissal of the complaint for want of jurisdiction.

A.

We first consider whether the district court had jurisdiction over the Association's claim under the School Reform Act. For purposes of our analysis, we assume that Act furnishes a cause of action. The District makes no argument to the contrary, and in general, "the absence of a valid (as opposed to arguable) cause of action does not implicate subject-matter jurisdiction." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89 (1998).

Under the federal-question statute, the "district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. For purposes of that provision, "a case can arise under

federal law in two ways." *Gunn v. Minton*, 568 U.S. 251, 257 (2013) (alteration and internal quotation marks omitted).

"Most directly, a case arises under federal law when federal law creates the cause of action asserted." *Id.*; *see Am. Well Works Co. v. Layne & Bowler Co.*, 241 U.S. 257, 260 (1916). That test "accounts for the vast bulk of suits that arise under federal law." *Gunn*, 568 U.S. at 257.

A claim under the School Reform Act cannot qualify for federal-question jurisdiction under that test. That is because the School Reform Act is not a "law of the United States" within the meaning of § 1331. Another provision, 28 U.S.C. § 1366, prescribes that, "[f]or the purposes of [§ 1331], references to laws of the United States . . . do not include laws applicable exclusively to the District of Columbia." The School Reform Act is such a law: it applies solely to the District, establishing and regulating charter schools within the District alone. Section 1366 then denies the School Reform Act the status of a "law of the United States" for purposes of the federal-question statute.

The Association does not dispute that conclusion. Instead, the Association relies on the second way in which an action arises under federal law for purposes of federal-question jurisdiction, which applies even though the cause of action is created by state law rather than federal law. In that "slim category" of cases, "federal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn*, 568 U.S. at 258. That test is not met here.

The Association identifies no federal question "necessarily raised" by its claim under the School Reform Act. The

Association submits that its claim raises a federal question—i.e., "whether the District may amend or repeal" the School Reform Act pursuant to its authority under the Home Rule Act. Association Supp. Br. 7; *see* HRA § 602(a)(3). But that question, even assuming it is federal in character, is not an "essential element" of a School Reform Act claim, as would be necessary for the claim to support federal-question jurisdiction. *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 315 (2005). The Association raises that question, not as an essential part of its affirmative claim, but instead in response to an anticipated *defense*—namely, the District's defense that, even if its actions conflict with the School Reform Act, it can amend or repeal that Act pursuant to its authority under the Home Rule Act. And it is black-letter law that an anticipated federal defense does not substantiate federal-question jurisdiction. *See Louisville & Nashville R.R. Co. v. Mottley*, 211 U.S. 149, 153 (1908). The Association thus errs in arguing that its School Reform Act claim arises under federal law even if the cause of action is nonfederal.

## B.

Next, the Association relies on its claim under the Home Rule Act. Again, we assume, without deciding, that the Act furnishes a cause of action. *See Steel Co.*, 523 U.S. at 89. The gravamen of the Association's claim is that the District's alleged contravention of the School Reform Act amounts to a violation of the Home Rule Act. That claim does not arise under federal law within the meaning of the federal-question statute.

The Home Rule Act is a "hybrid statute," *Thomas v. Barry*, 729 F.2d 1469, 1471 (D.C. Cir. 1984), in that while certain of its provisions apply "exclusively to the District of Columbia," 28 U.S.C. § 1366, others do not. In order to determine whether

a particular claim asserted under the Act falls within federal-question jurisdiction, we must assess whether the specific provision at issue is federal or local in character. That analysis turns on whether the provision can be "equated" with laws "enacted by state and local governments having plenary power to legislate for the general welfare of their citizens." *Thomas*, 729 F.2d at 1471 (quoting *Key v. Doyle*, 434 U.S. 59, 68 n.13 (1977)).

For example, in *Thomas*, we examined a claim raised under section 204 of the Home Rule Act, which "transfers certain functions away from the Secretary of Labor" and abolishes another federal "position entirely within the federal system." *Id.* We concluded that section 204 is federal in character because a "state or local statute" could not "direct the federal government to affect transfers or to abolish positions altering its structure." *Id.*

Here, the pertinent provisions of the Home Rule Act are sections 602(a)(3) and 717(b). Section 602(a)(3) provides that the D.C. Council "shall have no authority to . . . enact any act to amend or repeal any Act of Congress . . . which is not restricted in its application exclusively in or to the District." HRA § 602(a)(3) (codified at D.C. Code § 1-206.02(a)(3)). Section 717(b) provides in pertinent part that "[n]o law or regulation which is in force on" the Home Rule Act's effective date (January 2, 1975) "shall be deemed amended or repealed by this Act . . . but any such law or regulation may be amended or repealed by act or resolution as authorized in this Act." HRA § 717(b) (codified at D.C. Code § 1-207.17(b)).

The Association argues that those provisions are federal in character. That proposition cannot be squared with our decision in *Dimond v. District of Columbia*, 792 F.2d 179 (D.C. Cir. 1986). There, we considered the existence of federal-

question jurisdiction over claims brought under two provisions of the Home Rule Act. One limits the District's authority to "[e]nact any act, resolution, or rule . . . (relating to organization and jurisdiction of the District of Columbia courts)." HRA § 602(a)(4) (codified at D.C. Code § 1-206.02(a)(4)). The other limits the District's authority to "[e]nact any act or regulation relating to the United States District Court for the District of Columbia." HRA § 602(a)(8) (codified at D.C. Code § 1-206.02(a)(8)). We concluded that § 1366 excluded both provisions from the body of federal law because they both "would appear to apply exclusively to the District." *Dimond*, 792 F.2d at 188.

That logic equally applies here. In particular, the provisions of the Home Rule Act at issue in this case resemble the provisions we considered in *Dimond* in relevant respects. Like those provisions, § 602(a)(3) imposes a constraint only on the District's power to legislate, and its effect does not go beyond the compass of the District. It can thus be "equated" with local law, such that it falls outside the body of federal law by operation of § 1366. *Thomas*, 729 F.2d at 1471. So too for § 717(b), which merely announces a default rule with respect to laws in place on the effective date of the Home Rule Act. That provision clarifies that laws in effect on that date remain in place but are subject to repeal by the District. Section 717(b)'s effect is confined exclusively to the District, and the provision is thus excluded from federal law by § 1366.

The Association disputes that understanding of § 717(b). It reads the provision to "grant[], but then delimit[], the District's authority to amend congressional enactments." Association Supp. Br. 6. Even so, such a limitation on legislative authority would apply exclusively to the District. The provision thus would remain indistinguishable in character from sections 602(a)(4) and 602(a)(8) of the Act, the provisions

we considered in *Dimond*, 792 F.2d at 188. It follows that the Association's claim under the Home Rule Act, like its claim under the School Reform Act, cannot establish federal-question jurisdiction.

C.

We turn last to the Association's claim that the School Reform Act preempts contrary District law, including the school-funding provisions of the D.C. Code at issue. The Association argues that a preemption-based action of that kind arises under federal law for purposes of federal-question jurisdiction. We disagree.

In its complaint, the Association styled its preemption claim as arising under both the District Clause and the Supremacy Clause. *See* Complaint ¶ 79–89, J.A. 34–38. In its briefing before our court, the Association relies exclusively on the District Clause. *See* Association Supp. Br. 2–5. In either event, the claim does not support federal-question jurisdiction.

Under the general test for federal-question jurisdiction, a claim "arises under" federal law only if federal law *creates* the asserted cause of action. *See Gunn*, 568 U.S. at 257; *Am. Well Works Co.*, 241 U.S. at 260. And for preemption-like claims, the District Clause—like the Supremacy Clause—"certainly does not create a cause of action." *Armstrong v. Exceptional Child Ctr., Inc.*, 135 S. Ct. 1378, 1383 (2015). Rather, the District Clause, like the Supremacy Clause, "is silent regarding who may enforce federal laws in court, and in what circumstances they may do so." *Id.* Neither the District Clause nor the Supremacy Clause then directly furnishes the Association with a cause of action.

Still, the Association correctly observes that "[s]uits to enjoin official conduct that conflicts with the federal

Constitution are common." Association Supp. Br. 2. Indeed, a cause of action routinely exists for such claims. *See, e.g.*, *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 642 (2002); *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96 (1983); *see also* Richard H. Fallon, Jr. *et al.*, Hart & Wechsler's The Federal Courts and the Federal System 844–45 (7th ed. 2015). But the cause of action for such claims does not arise under the Constitution itself. Rather, it exists as "the creation of courts of equity." *Armstrong*, 135 S. Ct. at 1384. In other words, the Association's putative cause of action for its preemption-based claim would arise under federal common law. *See id.* We assume the existence of such a common-law action here (although we note that an action "to enjoin unlawful executive action is subject to express and implied statutory limitations," *Armstrong*, 135 S. Ct. at 1385, and we have no occasion to consider whether any such limitations would preclude recognizing a cause of action in this case).

While claims arising under federal common law typically fall within federal-question jurisdiction, *see Illinois v. City of Milwaukee*, 406 U.S. 91, 100 (1972), here, § 1366 forecloses federal jurisdiction. Under that statute, as we have seen, federal-question jurisdiction excludes claims whose cause of action arises under "laws applicable exclusively to the District of Columbia." Because the School Reform Act applies solely to the District, a common-law cause of action to guard against "illegal executive action" in violation of that Act, *Armstrong*, 135 S. Ct. at 1384, would have no broader application than the Act itself. Such an action would apply exclusively to the District, such that it would fall outside of federal-question jurisdiction by operation of § 1366.

If it were otherwise, a litigant bringing a claim barred from federal court by § 1366 could nonetheless gain access to a federal forum merely by restyling her claim as a "preemption"

one to enforce an ostensibly supreme federal law. Such a regime would make little sense. Rather, the Supreme Court has established that, even for preemption claims, the availability of federal-question jurisdiction hinges on Congress's "intent to withdraw federal jurisdiction under § 1331." *Verizon*, 535 U.S. at 644. Section 1366 speaks directly to that intent in the circumstances of this case. We thus conclude that the district court lacked jurisdiction over any common-law cause of action to enforce the School Reform Act.

\* \* \* \* \*

For the foregoing reasons, we vacate the judgment of the district court and remand with instructions to dismiss the complaint for want of jurisdiction.

*So ordered.*