**Marvin L. GRAVES, Appellant,**

v.

**OFFICE OF EMPLOYEE APPEALS and Department of Corrections, Appellees.**

**No. 99–CV–792.**

District of Columbia Court of Appeals.

Argued Nov. 9, 2000.

Decided Aug. 22, 2002.

James E. Drew, for appellant.

Sheila Kaplan, Assistant Corporation Counsel, with whom Robert R. Rigsby, Corporation Counsel at the time, Charles L. Reischel, Deputy Corporation Counsel, and Carolann Gemski, Assistant Corporation Counsel, were on the brief, for the Department of Corrections.

Harley J. Daniels, General Counsel, and Sheila G. Barfield, Deputy General Counsel, were on the brief for the Office of Employee Appeals.

Before TERRY, RUIZ, and REID, Associate Judges.

TERRY, Associate Judge:

Appellant Graves seeks review of a trial court order affirming a decision of the

Office of Employee Appeals ("OEA"). The OEA had ruled that Graves was properly removed from his job for being inexcusably absent without leave ("AWOL") for ten consecutive work days. From May 17, 1991, until at least June 4, 1991, Graves was AWOL from his position as a cook at a Department of Corrections ("DOC") facility. He did not then, nor does he now, offer any explanation for his absence. On August 2, 1991, fifty-three business days after May 17 and forty-five business days after May 30, Graves received a letter from the DOC, dated July 25, notifying him that the DOC intended to terminate his employment because of his unexcused absence.

Graves contends on appeal that the DOC was time-barred from removing him from his job, under the Comprehensive Merit Personnel Act (CMPA), because more than forty-five business days had elapsed between his initial absence on May 17 and his receipt of the notice of adverse action from the DOC on August 2. We find this argument without merit and affirm the order of the trial court.

I

The relevant facts are undisputed. Graves was employed by the DOC as a cook at the District of Columbia Jail. On May 17, 1991, he failed to report for work and did not return to work, according to the OEA's findings of fact, until "an indeterminate date sometime after June 4, 1991." Graves did not have permission to be absent from work, nor did he contact anyone at the DOC to explain his absence.[1] Consequently, he was classified as absent without leave.

On July 25 the DOC mailed appellant notice of a proposed adverse action against him, which he received on August 2. The notice stated:

Pursuant to Title XVI of the Comprehensive Merit Personnel Act, this is an advance notice of at least thirty (30) calendar days of a proposal to remove you from your position of Correctional Cook with the D.C. Department of Corrections for the following cause:

Inexcusable Absence Without Leave

Absence from duty without permission which was charged to "absence without official leave:" To wit:

Ten (10) consecutive workdays or more.

The details in support of this proposal are as follows:

Reports received in this office revealed that you have been in an Absence Without Official Leave (AWOL) from May 17, 1991, to June 4, 1991. During the above period, you had not requested any type of leave nor had you been granted leave.

On September 13, 1991, Graves' termination from the DOC became final.

Graves filed an appeal with the OEA on December 3, 1991. His sole argument was that the period of 45 business days within which an adverse action could be commenced against him under the applicable provision of the CMPA, D.C.Code § 1–617.1(b–1)(1) (1992) (repealed 1998), had expired by August 2, 1991. The OEA affirmed the DOC's decision to terminate Graves. He then sought review in the Superior Court, which remanded the matter to the OEA for further findings, ruling that the original OEA decision was un-

---

1. On May 24 Mr. Graves' supervisors sent him a letter by certified mail, asking him to explain the reason for his absence from work. Although the letter was accepted by someone on Mr. Graves' behalf on May 31, it was later learned that the letter was delivered to the wrong address.

clear. The matter was assigned to Administrative Law Judge Blanca Torres, who held that "the 45 day window for commencing an adverse action began on May 31, 1991," after Graves had been absent without leave for ten consecutive business days. Because Mr. Graves received the DOC's notice of its proposed adverse action on August 2, the 45th day, Judge Torres upheld his termination. The Superior Court, on further review, affirmed that decision. This appeal followed.

## II

Graves' sole argument is that, under the CMPA, the DOC was barred from commencing adverse action against him on August 2 because that date was 53 business days after his first day of being AWOL, which was May 17. The pertinent statute provided:

> [N]o corrective or adverse action shall be commenced ... more than 45 days, not including Saturdays, Sundays, or legal holidays, after the date that the agency knew or should have known of the act or occurrence allegedly constituting cause, as that term is defined in subsection (d) of this section.

D.C.Code § 1–617.1(b–1)(1) (1992) (repealed 1998).[2] The issue we must decide is when the 45 day period started running in this case, i.e., when the DOC "knew or should have known of the act or occurrence allegedly constituting cause." Subsection (d) lists twenty-two "causes" for initiating adverse action against a government employee, including "inexcusable ab-

sence without leave." D.C.Code § 1–617.1(d)(9).[3]

Section 1–617.1 must be read in tandem with the District Personnel Manual ("DPM"), a compendium of applicable regulations which can be found at 34 D.C. Register 1845 (March 20, 1987). Section 1603.1(i) of the DPM, like its statutory cognate, lists "inexcusable absence without leave" as one of several "causes" justifying an adverse action. But under section 1618.1, which prescribes the penalties to be imposed for various types of cause, "inexcusable absence without leave" is subdivided into two categories which vary according to the length of the absence. An employee who is inexcusably AWOL for "Ten (10) consecutive workdays or more" is subject to "removal" in every case, whereas one who is AWOL for "any other period" is subject only to lesser sanctions, ranging from a reprimand to a 15 day suspension, unless it is at least the employee's third offense.[4] See 34 D.C. Register at 1867. Judge Torres recognized this distinction; indeed, it is at the heart of her decision.

The parties agree that the 45 day period for bringing an adverse action against a government employee begins when the agency "knew or should have known of the act or occurrence allegedly constituting cause." D.C.Code § 1–617.1(b–1)(1). Because Mr. Graves did not provide his employer with an excuse for his absence on May 17, 1991, he maintains that the 45 day period should start running from that day. Alternatively, he contends that the 45 day

---

2. The relevant portions of the CMPA were extensively revised in 1998. Adverse actions are now governed by D.C.Code §§ 1–616.51 et seq. (2001) and chapter 16 of the District of Columbia Personnel Regulations, 47 D.C. Register 7094 (September 1, 2000). The 45 day provision at issue in this case is no longer in the statute.

3. For the purposes of this appeal, we assume that "inexcusable" is synonymous with "unexcused."

4. Graves appears to have been AWOL at other times prior to May 17, 1991, but no formal adverse action was taken for those infractions.

period should start on May 21, because an internal memorandum indicates that the DOC knew of his unexcused AWOL status no later than that day. Either way, Graves argues, the DOC was time-barred from initiating an adverse action against him on August 2, because by then more than 45 business days had passed since either May 17 or May 21.

This argument, however, fails to take into account both the specific adverse action taken against him and the "cause" underlying that action. It ignores the fact that the particular adverse action sought by the DOC—termination—could be initiated under section 1618.1 of the DPM only after appellant, as a first-time offender, had been absent without leave for "Ten (10) consecutive workdays or more." [5] Graves contends the DOC's argument to this effect confuses the penalty with the "act or occurrence allegedly constituting cause." [6] The flaw in Graves' position is that the "cause" must justify the specific adverse action sought by the DOC. The cause for terminating Mr. Graves, as stated in the DOC's notice, was that he was inexcusably absent without leave *for ten consecutive days*, not merely that he was inexcusably absent without leave. As Judge Torres held:

Agency's charge pertains to a period of ten days or more. Until the 10–day period ended, Agency did not know nor could it have known that Employee would be absent for that length of time. Prior to that time, it would have been impossible for Agency to make a determination that Employee was absent for a period of "ten days or more."

Thus the 45–day period did not begin to run until the eleventh day after Graves' unexcused absence began. That eleventh day, as Judge Torres ruled, was May 31, and the clock started ticking on that date.[7] Since the 45th business day from that date was August 2, and since the DOC mailed the notice of its proposed adverse action on July 25 and Graves received it on August 2, Judge Torres concluded that the DOC "commenced the adverse action within the 45–day window, in keeping with D.C.Code § 1–617.1(b–1)(1)." We hold that this conclusion was correct.[8]

The order of the Superior Court affirming the final decision of the OEA is therefore

*Affirmed.*

---

**5.** The notice of adverse action stated that DOC proposed "to remove you from your position" for inexcusable absence without leave. Removal from a position, however, is permissible only if the absence is for at least ten consecutive days (unless it is at least a third offense, which was not the case here).

**6.** D.C.Code § 1–617.1(b–1)(1).

**7.** *Cf. Doe v. District of Columbia Comm'n on Human Rights,* 624 A.2d 440 (D.C.1993), in which we held, in an analogous context, that "a statute of limitation begins to run at the time the right to maintain the action accrues, *i.e.,* from the time that all the elements of a cause of action have come into existence." *Id.* at 444 (citations omitted).

**8.** Mr. Graves contends that Judge Torres' decision is inconsistent with the legislative history of the CMPA. We agree with the DOC that the legislative history has no bearing on the issue before us in this case, which is when the 45 day period started to run. Since we hold that the notice was served within the 45 day period, we also have no need to decide whether that period is mandatory or merely directory. *See, e.g., Washington Hospital Center v. District of Columbia Dep't of Employment Services,* 712 A.2d 1018, 1020 (D.C. 1998); *Teamsters Local Union 1714 v. Public Employee Relations Board,* 579 A.2d 706, 710 (D.C.1990).