# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued September 13, 2010          Decided October 22, 2010

No. 08-7150

MORTON A. BENDER AND GRACE M. BENDER,
APPELLEES

v.

CAROLYN D. JORDAN, ET AL.,
APPELLANTS

INDEPENDENCE FEDERAL SAVINGS BANK,
APPELLEE

———

Appeal from the United States District Court
for the District of Columbia
(No. 1:06-cv-00092-RMC)

———

*Frederick D. Cooke Jr.* argued the cause and filed the briefs for appellants. *Peter E. Strand* entered an appearance.

*Dale A. Cooter* argued the cause for appellee Independence Federal Savings Bank. With him on the brief was *Donna S. Mangold*. *Griffin V. Canada Jr.* entered an appearance.

Before: BROWN, *Circuit Judge*, and EDWARDS and WILLIAMS, *Senior Circuit Judges*.

Opinion for the Court filed by *Senior Circuit Judge* WILLIAMS.

WILLIAMS, *Senior Circuit Judge*:  This is a fee dispute arising out of prolonged litigation between various parties interested in Independence Federal Savings Bank ("IFSB" or the "Bank"), a federal stock savings association regulated at the time of the relevant events by the Office of Thrift Supervision ("OTS").[1]  One substantive phase, possibly the last, began in 2006 when shareholders Morton and Grace Bender filed a securities law suit against IFSB, five then directors and its president and CEO.  Those six individuals executed agreements with IFSB under which the Bank advanced funds for defense of the suit, on the condition that each individual would repay the expenses if later determined not to be entitled to indemnification under an OTS regulation, 12 C.F.R. § 545.121.

On the merits, the district court granted a preliminary injunction in favor of the Benders, *Bender v. Jordan*, 439 F. Supp. 2d 139 (D.D.C. 2006), who soon thereafter acquired control of the Bank.  With them in charge, the district court dismissed their substantive claims as moot. *Bender v. Jordan*, 515 F. Supp. 2d 10 (D.D.C. 2007).

---

[1]Under the recently enacted Dodd-Frank Wall Street Reform and Consumer Protection Act, the Office of Thrift Supervision will be eliminated and its authority over federal savings associations will be transferred to the Office of the Comptroller of the Currency. Pub. L. No. 111-203, §§ 311-13, 369, 124 Stat. 1376, 1520-23, 1557-65 (2010) (to be codified at 12 U.S.C. §§ 5412-13, 1463).

ISFB's new board of directors then unanimously approved a resolution stating that three of the original six individual defendants—namely, two former directors and the former president and CEO—were not entitled to indemnification and demanding repayment of legal fees advanced pursuant to their respective agreements. Joint Appendix ("J.A.") 130. These three individuals refused to repay. IFSB filed a cross-claim against them for breach of contract, and the district court granted summary judgment in favor of IFSB. *Bender v. Jordan*, 570 F. Supp. 2d 37 (D.D.C. 2008). The district court also rejected the three cross-defendants' argument that the obligation should be split six ways among the original six individuals, and ruled that each of the three cross-defendants should be severally liable for one-third of the entire amount advanced. It absolved the three original defendants not named by IFSB as cross-defendants, saying, "Because [the other three defendants] were not found to be actively involved [in the securities law violations alleged by the Benders] . . . , it was not unreasonable for the current Board to decide that their 'fair share' of the legal fees and expenses was $0.00." *Id*. at 48.

The three cross-defendants (here called for simplicity's sake the "former directors") appeal on the grounds that IFSB failed to comply with the procedures set forth in 12 C.F.R. § 545.121 and that they therefore are not required to reimburse IFSB under the terms of the agreements. They also appear to make an obscure argument that the agreements themselves obligate the IFSB to initiate procedures alluded to in the regulation. Because their reading of 12 C.F.R. § 545.121 is mistaken (as is their reading of the contract, to the extent that they rely on it at all), we affirm the judgment of the district court. In their brief to this court the former directors did not specifically challenge the district court's exclusion of the other three original defendants, and only did so indirectly at oral argument. See Oral Arg. Recording at

38:18-40:18. The apportionment issue is therefore forfeited. See *Williams v. United States*, 396 F.3d 412, 415 (D.C. Cir. 2005) (argument inadequately raised in opening brief is forfeited).

* * *

Although the parties do not raise the issue, we must first consider whether the district court properly exercised jurisdiction. A case arises under federal law within the meaning of 28 U.S.C. § 1331 "if 'a well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law.'" *Empire Healthchoice Assurance, Inc. v. McVeigh*, 547 U.S. 677, 690 (2006) (quoting *Franchise Tax Bd. of Cal. v. Construction Laborers Vacation Trust for Southern Cal.*, 463 U.S. 1, 27-28 (1983)). IFSB's cause of action—breach of contract— appears on its face to be one created by state law. But even where that is true, the federal courts have jurisdiction when, as here, it is apparent that the federal questions overwhelmingly predominate.

For federal courts to have jurisdiction, the state law claim must turn on an "actually disputed and substantial" issue of federal law, *Grable & Sons Metal Products, Inc. v. Darue Engineering & Mfg.*, 545 U.S. 308, 314 (2005), and federal jurisdiction must be "consistent with congressional judgment about the sound division of labor between state and federal courts governing the application of § 1331." *Id*. at 313-14. The Court has said that this depends on such factors as the strength of the federal interest in a federal forum to resolve questions of federal law and whether federal jurisdiction would "materially affect" the "normal currents of litigation." *Id*. at 315, 319. Federal jurisdiction is favored in cases that

present "a nearly 'pure issue of law' . . . 'that could be settled once and for all and thereafter would govern numerous . . . cases.'" *Empire*, 547 U.S. at 700 (quoting Richard H. Fallon, Jr., Daniel J. Meltzer, & Daniel L. Shapiro, Hart & Wechsler's The Federal Courts and the Federal System 65 (2005 Supp.)). Conversely, federal jurisdiction is disfavored for cases that are "fact-bound and situation-specific" or which involve substantial questions of state as well as federal law. *Empire*, 547 U.S. at 701.

As in *Grable* (but not in *Empire*), this case presents a nearly pure issue of federal law, and none of the other relevant factors weighs against federal jurisdiction. Although breach of contract is a state law cause of action, the agreements themselves are "creatures of federal law," see *Jackson Transit Authority v. Local Division 1285, Amalgamated Transit Union*, 457 U.S. 15, 23 (1982), in the sense of being intended to implement the scheme designed by 12 C.F.R. § 545.121. The former directors and IFSB entered into the agreements because federal law *requires* the execution of such contracts before legal fees can be advanced to defendant officers and directors. *Id*. § 545.121(e). And the parties' legal duties turn almost entirely on the proper interpretation of that regulation. The federal interest in a federal forum for this case is substantial. At stake is the interpretation of a federal regulation that governs the conduct of a federal agency—the Office of Thrift Supervision—and federally chartered savings associations. By contrast, there is no discernable state interest in a state forum.

The Court's opinions in this area call on the federal courts to make predictive judgments about, for example, whether jurisdiction over such actions as the one in question will "materially affect, or threaten to affect, the normal currents of litigation," *Grable*, 545 U.S. at 319, presumably by leading to a wave of new filings in federal court. Creation of precedent

interpreting 12 C.F.R. § 545.121 is likely in fact to reduce the frequency of disputes over contracts under 12 C.F.R. § 545.121(e). And in many instances (indeed, it may be the case here, but we need not reach it), the federal courts would have supplemental jurisdiction over 12 C.F.R. § 545.121(e) breach of contract claims. Here we have turned first to federal question jurisdiction primarily because idiosyncrasies of the record pose special problems for supplemental jurisdiction. In any case, we do not anticipate that this exercise of federal jurisdiction will portend any more than "a microscopic effect on the federal-state division of labor." *Grable*, 545 U.S. at 315.

Our finding of jurisdiction under *Empire* and *Grable* makes it unnecessary to consider alternative grounds. These include federal question jurisdiction under the opinion in *Jackson Transit* (for cases where Congress has intended that "all rights and duties stemming from" a contract should be governed by federal law, see *Empire*, 547 U.S. at 693) and supplemental jurisdiction under 28 U.S.C. § 1367.

\* \* \*

Thus we reach the merits, which depend on the federal regulation and, to a much lesser extent, on the identically worded agreements seeking to implement that regulation. We start with the latter:

> Pursuant to Regulations of the Office of Thrift Supervision (the "OTS") governing advancement of expenses to directors and officers of a federal savings association, 12 C.F.R. § 545.121(e), (the "Regulation"), with respect to claims brought against a director or officer arising from service as a director or officer of a federal savings association, I hereby request that Independence

> Federal Savings Bank (the "Bank") pay reasonable expenses and costs that have been or will be incurred in the defense or settlement of the litigation styled as Morton A. Bender, et al. v. Carolyn D. Jordan, et al. Under the Regulation, I hereby agree that I will repay the Bank any amounts so paid on my behalf by the Bank if it is later determined that I am not entitled to indemnification with respect to the litigation under 12 C.F.R. § 121 [sic], and I represent that I have sufficient assets to repay my fair share of such amounts.

J.A. 109-11 (punctuation as in original). The parties agree that the second reference to the regulation should be understood to refer to 12 C.F.R. § 545.121 (as does the first, accurately).

Although 12 C.F.R. § 545.121(f) authorizes covered banks to enact bylaws governing indemnification of officers and directors, IFSB did not do so. Thus the former directors' claim of a violation by the Bank turns on the indemnification provisions of 12 C.F.R. § 545.121(b) and (c):

> (b) *General*. Subject to paragraphs (c) and (g) of this section, a savings association shall indemnify any person against whom an action is brought or threatened because that person is or was a director, officer, or employee of the association, for:

> > (1) Any amount for which that person becomes liable under a judgment if [sic; presumably *in*] such action; and

> > (2) Reasonable costs and expenses, including reasonable attorney's fees, actually paid or incurred by that person in defending or settling such action, or in enforcing his or her rights under this section if he

or she attains a favorable judgment in such enforcement action.

(c) *Requirements*. Indemnification shall be made to such period [sic; presumably *person*] under paragraph (b) of this section only if:

(1) Final judgment on the merits is in his or her favor; or

(2) In case of:

(i) Settlement,

(ii) Final judgment against him or her, or

(iii) Final judgment in his or her favor, other than on the merits, [¶]

if a majority of the disinterested directors of the savings association determine that he or she was acting in good faith within the scope of his or her employment or authority as he or she could reasonably have perceived it under the circumstances and for a purpose he or she could reasonably have believed under the circumstances was in the best interests of the savings association or its members.

12 C.F.R. § 545.121 (b), (c). We have inserted a ¶ sign in brackets before the "if" clause at the very end, to make clear that, as all parties agree, that clause governs indemnification under *any* of the subsections of § 545.121(c)(2).

In the useful nomenclature adopted by the court in *Harris v. Resolution Trust Corporation*, 939 F.2d 926 (11th Cir. 1991), this regulation allows for two types of indemnification—"mandatory indemnification" under 12

C.F.R. § 545.121(c)(1) for directors who receive final judgment in their favor on the merits, and "permissive indemnification" under 12 C.F.R. § 545.121(c)(2) for those who do not. In the second case indemnification is proper only if a majority of disinterested directors make certain prescribed findings.

Because the former directors did not receive final judgment in their favor on the merits, they are not entitled to "mandatory indemnification." They argue, however, that they are not in breach of contract until a majority of disinterested new directors has determined, in good faith, that each former director was not "acting in good faith within the scope of his or her employment or authority as he or she could reasonably have perceived it under the circumstances and for a purpose he or she could reasonably have believed under the circumstances was in the best interest of the savings association and its members." 12 C.F.R. § 545.121(c)(2). In essence, they claim that the regulation obliges a bank to launch a process that might create a permissive entitlement. Thus, the board would have to take whatever steps are necessary to assure the presence of directors qualifying thereunder as disinterested and to be sure that such directors then determine whether the former directors were acting in good faith and for purposes that they could reasonably believe were in the best interest of the savings association. If these disinterested persons found that these conditions were met, then the Bank would be required to indemnify the former directors.

The former directors' interpretation of the regulation is mistaken. 12 C.F.R. § 545.121(c) does not require a board of directors to indemnify directors and officers in any circumstances in which the officers or directors have not received final judgment on the merits in their favor. Permissive indemnification is discretionary. 12 C.F.R.

§ 545.121(c)(2) provides a standard that must be met for a board of directors to grant permissive indemnification; it goes on, in a passage not quoted, to require notice to the OTS 60 days before a bank provides indemnification under either subsection of 12 C.F.R. § 545.121(c), and to bar indemnification if the OTS states an objection within the notice period. The policy manifested by 12 C.F.R. § 545.121(c)(2) is one of protecting the financial health of savings associations by limiting the ability of boards to indemnify undeserving officers and directors and by providing for regulatory review. For us to find that the regulation mandates that directors jump through the hoops required for permissive indemnification would, inconsistently with that purpose, impose a potentially costly burden on savings associations (even if we were to disregard the attendant risks of litigation). There is no *requirement* for a board of directors to do anything at all under 12 C.F.R. § 545.121(c)(2) and therefore no *entitlement* to indemnification for officers and directors beyond 12 C.F.R. § 545.121(c)(1) unless and until the disinterested directors have approved permissive indemnification in accordance with 12 C.F.R. § 545.121(c)(2) and the OTS has not objected during the 60-day notice period.

The former directors cite *Resolution Trust Corporation v. Nicholson*, Civ. No. 3-88-163, 1991 U.S. Dist. LEXIS 21143 (E.D. Tenn. Sept. 5, 1991), in support of their interpretation of 12 C.F.R. § 545.121(c)(2). The *Nicholson* court stated in dictum that a board of directors' decision not to indemnify a director under 12 C.F.R. § 545.121(c)(2) "is to be made in good faith and based on the board's fiduciary responsibilities." *Nicholson*, 1991 U.S. Dist. LEXIS 21143 at *18 (citing OTS Opinion Letter, 1989 FHLBB LEXIS 458, 1989 WL 1114183 (October 6, 1989)). Because the court determined that Nicholson's claim was not ripe, it did not rule on the exact scope of the board of directors' duties. *Id*. at *19. In contrast to *Nicholson*, we reach the merits of the argument.

We agree that insofar as the new directors are acting in their official capacity, they are bound by their fiduciary duties to IFSB. But 12 C.F.R. § 545.121(c)(2) imposes no additional duty of good faith for board members to undertake the procedures prerequisite to permissive indemnification. It therefore creates no general entitlement to indemnification under 12 C.F.R. § 545.121(c)(2) where the board of directors does not consider the determinations necessary to create a permissive entitlement.

In their opening brief the former directors hint, in the most subtle way imaginable, at a claim that the *agreements* themselves created a duty on the Bank's part to launch the procedures for finding a permissive entitlement. The argument becomes explicit in the reply brief, but of course we typically disregard arguments that pop up only at that stage, when the appellee's chance to respond has passed. *Carducci v. Regan*, 714 F.2d 171, 177 (D.C. Cir. 1983).

In any event, the argument's lack of merit is plain. To be sure, the agreements call for the recipients of advances to repay them "if it is later determined that I am not entitled to indemnification" under the regulation. J.A. 109-11. The board in fact made such a determination, adopting a resolution to the effect that the former directors were not entitled to indemnity. The board did not purport to address the possibility of permissive indemnification. Presumably the parties could have assigned the board a duty to address that issue, a duty altogether outside 12 C.F.R. § 545.121, but it used no language purporting to do so. Especially in agreements declaring themselves to be "[p]ursuant" to OTS's regulations, where the former directors agreed to repay "[u]nder" 12 C.F.R. § 545.121, it would take far clearer language to impose any such burden on the board.

The former directors' brief is replete with assertions that the Bank's new board directors are subject to a general duty of good faith. No doubt. But that general interpretive gloss is no basis for generating a whole new duty *ex nihilo*.

As the former directors have satisfied neither the conditions for mandatory nor those for permissive entitlement, and the board has made a determination embodying that fact, the former directors are obligated under the agreements to repay IFSB for the cost of their legal defense.

\* \* \*

The judgment of the district court is therefore

*Affirmed.*