# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

Argued September 19, 2024      Decided December 20, 2024

No. 23-7093

TIMOTHY L. JENKINS, ET AL.,
APPELLANTS

v.

HOWARD UNIVERSITY AND HOWARD UNIVERSITY BOARD OF
TRUSTEES,
APPELLEES

Appeal from the United States District Court
for the District of Columbia
(No. 1:22-cv-00874)

*Donald M. Temple* argued the cause and filed the briefs for appellants.

*Jo-Ann Tamila Sagar* argued the cause for appellees. With her on the brief were *Amanda NeCole Allen* and *Lillian Hardy*.

Before: MILLETT, WILKINS and RAO, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* WILKINS.

2

WILKINS, *Circuit Judge*: This case arises out of an abrupt, contentious change to governance at one of our nation's most historic and significant educational institutions—The Howard University. The University's Board of Trustees amended the institution's bylaws to remove trustee positions that alumni, students, and faculty had filled for several decades. Appellants, a group of alumni ("the Alumni"), sued the University and the Board (collectively, "Howard") in D.C. Superior Court seeking a declaration that the Board's amendment was *ultra vires* because it violated the governing bylaws. Howard removed the case to federal court, arguing that the governance dispute hinged on the University's federal charter. The Alumni moved to remand. The District Court denied the Alumni's motion, holding that the suit implicated a significant federal issue under *Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing*, 545 U.S. 308, 312 (2005). *Jenkins v. Howard Univ.*, Civil Action No. 22-00874 (RC), 2023 WL 1070552, at *2–4 (D.D.C. Jan. 27, 2023). Following briefing on the merits, the District Court granted Howard's motion to dismiss the case under Federal Rule of Civil Procedure 12(b)(6). *Jenkins v. Howard Univ.*, Civil Action No. 22-00874 (RC), 2023 WL 3948815, at *8 (D.D.C. June 12, 2023). This appeal followed.

We hold that the District Court erred in exercising jurisdiction over the case because it neither arises under federal law nor presents a significant, disputed federal issue under *Grable*. We thus reverse and remand to the District Court with instructions to dismiss without prejudice for lack of subject matter jurisdiction.

3

**I.**

**A.**

Howard was established by congressional charter in 1867.[1] An Act to Incorporate the Howard University in the District of Columbia, ch. 162, § 1, 14 Stat. 438 (1867). The charter vested Howard's governance in a board of trustees, whom it directed to enact governing bylaws "not inconsistent with the laws of the United States." *Id.* §§ 3–4. Almost 100 years ago, the Board amended its bylaws to create seats for alumni-nominated trustees. The bylaws in effect before the challenged amendment set rules governing Board meetings, bylaw amendments, and nomination and voting for alumni trustees. Specifically, the operative bylaws provided that (1) one-third of the Board's membership constituted a quorum for general meetings; (2) amendments to the bylaws required an affirmative vote by three fourths of the present members at a meeting properly noticed and attended; and (3) three alumni trustees had to be elected for staggered three-year terms.

Purportedly exercising emergency authority during the COVID-19 pandemic, the Board's Governance Committee Chair unilaterally suspended elections in 2020 for all "affiliate trustees," which included seats filled by students, faculty, and alumni. Not long after, when only two alumni trustees remained on the Board, the Board amended the bylaws to eliminate the affiliate trustee positions altogether.

**B.**

Following the amendment, the Alumni sued in D.C. Superior Court. The suit alleged that the Board's election

---

[1] Because it does not affect our disposition, we assume without deciding that Howard's charter is federal law.

suspension and bylaws amendment violated the procedure mandated by the bylaws, and sought a declaratory judgment that the Board's actions were *ultra vires*. The Alumni later amended their complaint to add a breach of fiduciary duty claim.

Howard removed the case, arguing that it presented a federal question under 28 U.S.C. § 1331 because the "internal affairs doctrine" required application of federal law. J.A. 12. Alternatively, Howard argued that the suit "implicate[d] significant federal issues" under *Grable & Sons Metal Products, Inc.*, 545 U.S. at 312. J.A. 13–14. The Alumni moved to remand.

The District Court denied the remand motion. *Jenkins*, 2023 WL 1070552. Assuming without deciding that state law governed, the District Court found that the amended complaint necessarily raised a disputed, substantial federal issue that it could resolve without disrupting the federal–state balance. *Id.* at *2–4 (applying *Grable*, 545 U.S. 308). Specifically, the District Court discerned a necessarily raised and disputed federal issue because evaluating whether the Board's actions were *ultra vires* required reference to the federal charter that established the Board and entrusted it with authority to govern. *Id.* at *3. So it held that federal jurisdiction was proper under *Grable*. *Id.* at *3–4.

Upon a motion from Howard, the District Court later dismissed the case under Rule 12(b)(6). *Jenkins*, 2023 WL 3948815, at *1. The Alumni appealed that final order, renewing their jurisdictional objections and challenging the District Court's dismissal. Because we agree with the Alumni that the District Court lacked subject matter jurisdiction, we do not reach the disputed merits issues.

## II.

We have jurisdiction under 28 U.S.C. § 1291 to review a district court's final order dismissing an action for failure to state a claim. *Ciralsky v. C.I.A.*, 355 F.3d 661, 666 (D.C. Cir. 2004). After dismissal, "the district court's earlier denial of the motion to remand for lack of subject matter jurisdiction also is reviewable." *Cap. Hill Grp. v. Pillsbury, Winthrop, Shaw, Pittman, LLC*, 569 F.3d 485, 488 (D.C. Cir. 2009). We review a district court's legal conclusions regarding subject matter jurisdiction *de novo*. *Am. Fed'n of Gov't Emps. v. Trump*, 929 F.3d 748, 754 (D.C. Cir. 2019).

## A.

Consistent with Article III's "arising under" jurisdiction, Congress has authorized federal courts to hear "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331; *Osborn v. Bank of U.S.*, 22 U.S. 738, 823–28 (1824). Under Section 1331, "a case can arise under federal law in two ways." *Gunn v. Minton*, 568 U.S. 251, 257 (2013) (cleaned up). "Most directly, a case arises under federal law when federal law creates the cause of action asserted." *Id.* (citation omitted). This avenue "accounts for the vast bulk of suits that arise under federal law." *D.C. Ass'n of Chartered Pub. Sch. v. District of Columbia*, 930 F.3d 487, 491 (D.C. Cir. 2019) (quoting *Gunn*, 568 U.S. at 257). The Supreme Court has also recognized another "slim category" of cases that Section 1331 reaches: "federal jurisdiction over a state law claim will lie if a federal issue is[] (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal–state balance approved by Congress." *Id.* (quoting *Gunn*, 568 U.S. at 258); *accord Grable*, 545 U.S. at 312.

"[B]ecause we presume that federal courts lack jurisdiction unless the contrary appears affirmatively from the record, the party asserting federal jurisdiction when it is challenged has the burden of establishing it." *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 n.3 (2006) (cleaned up); *accord Wilson v. Republic Iron & Steel Co.*, 257 U.S. 92, 97 (1921). Recognizing "the need to give due regard to the rightful independence of state governments—and more particularly, to the power of the States to provide for the determination of controversies in their courts," we construe jurisdictional statutes narrowly. *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Manning*, 578 U.S. 374, 389 (2016) (cleaned up); *see Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108–09 (1941).

**1.**

As an initial matter, this action does not "arise under" federal law. None of the causes of action raised in the Alumni's amended complaint arise under federal law. Nor are any questions of federal law actually disputed. Howard's pushback against this conclusion takes two forms. First, it insists that a plain reading of the amended complaint demonstrates that the federal charter "forms the basis of" the Alumni's requested relief. Appellees' Br. 20. Second, it asserts that under the internal affairs doctrine, removal is necessary because federal law governs the Alumni's claims. We address each argument in turn.

*First*, it is well established that an entity's status as federally chartered is not enough to make all suits against it automatically "arise under" federal law. *See Am. Nat'l Red Cross v. S.G.*, 505 U.S. 247, 254–57 (1992). Rather, federal jurisdiction automatically arises in suits by or against a federally chartered institution "if, but only if," the entity's sue-and-be-sued provision "specifically mentions the federal

courts." *Id.* at 255; *accord Lightfoot v. Cendant Mortg. Corp.*, 580 U.S. 82, 90–91 (2017). The "sue-and-be-sued provision" in Howard's charter does not specifically mention federal courts. J.A. 253 § 2. It follows that the Alumni's suit does not "arise under" federal law merely because Howard is federally chartered and authorized to sue.

Moreover, Howard's insistence that the federal charter "forms the basis of" or is "at the heart of" the amended complaint is unsupported. Appellants' Br. 20, 22. It is true that the charter generally vests the Board with authority to govern. But the Alumni's participation in governance—the core of this lawsuit—was not established until several decades after the charter's passage when the Board amended the bylaws to create alumni trustee positions. The bylaws also govern whether the bylaws were properly amended. And so it is the bylaws—not the charter—that form the basis of the Alumni's asserted right to participate in Howard's governance.

*Second*, we are not persuaded that the internal affairs doctrine transforms the Alumni's suit into one that arises under federal law. The internal affairs doctrine is a conflict-of-laws principle recognizing that a corporation's internal affairs should not be subject to regulation by more than one jurisdiction. *Edgar v. MITE Corp.*, 457 U.S. 624, 645 (1982); *see also* RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 302 (AM. L. INST. 1971).

Howard asserts that federal law governs the Alumni's claim because a corporate entity's internal affairs are subject to the laws of its incorporating jurisdiction. Because the University is congressionally chartered, Howard argues, federal common law governs this dispute. But the Supreme Court has considered and rejected the argument that the internal affairs doctrine requires application of federal common

law to corporate governance claims against federally chartered entities. *See Atherton v. F.D.I.C.*, 519 U.S. 213, 218, 223–25 (1997).[2] In any event, Howard has presented "no significant conflict with, or threat to, a federal interest" that would arise by application of D.C. law. *See id.* at 225–26. Nor has it advanced any basis for applying this conflict-of-laws principle as a jurisdictional hook.

Howard has not met its burden to demonstrate that this case arises under federal law. But there is one other means by which federal question jurisdiction could lie.

**2.**

We now turn to the test set forth in *Grable*: whether the Alumni's case necessarily raises disputed and substantial federal issues capable of resolution in federal courts without disrupting the federal–state balance. For the following reasons, it does not.

The District Court relied on *District of Columbia v. Group Hospitalization & Medical Services, Inc. ("GHMSI")*, 576 F. Supp. 2d 51 (D.D.C. 2008), and that case's application of *Grable*, to hold that it had federal question subject matter jurisdiction. *Jenkins*, 2023 WL 1070552, at *3–4. Though it does not bind us, *GHMSI* serves as a helpful reference because

---

[2] In *Atherton*, the Supreme Court held that a federal corporation's creation via "a federal charter by itself shows no conflict, threat, or need for federal common law." 519 U.S. at 223 (internal quotation marks omitted). It then rejected the corporation's appeal to the internal affairs doctrine, which the corporation argued necessarily required application of federal law. *Id.* at 223–25 (explaining that although the internal affairs doctrine "avoid[s] conflict by requiring that there be a single point of legal reference," it is void of any suggestion "that the single source of law must be federal").

it also involved a state law claim against a federally chartered entity.

In *GHMSI*, the plaintiff alleged that a federally chartered non-profit corporation "willfully violated [its] charter." 576 F. Supp. 2d at 55 (quoting the complaint). The plaintiff repeatedly referenced and relied upon the charter's "charitable purpose" provision in crafting its breach of trust claim. *Id.* And the plaintiff's requested relief rested squarely on the court's interpretation of, and power to enforce, the charter. *Id.* (explaining that the plaintiff had asked "the [c]ourt to declare that Defendants have violated [the] charter and to enjoin Defendants from further violations of [the] charter" (cleaned up)).

Accordingly, the *GHMSI* court reasoned that, like *Grable*, the case "really and substantially involv[ed] a dispute respecting the validity, construction, or effect of a congressional act—*i.e.*, [the] charter." *Id.* (cleaned up). Because the *GHMSI* court could not grant the plaintiff "relief on its state law claims without . . . interpreting [the] federal charter," it held that the "plaintiff's complaint 'necessarily raise[d] a stated federal issue'" under *Grable*. *Id.* at 55–56 (quoting *Grable*, 545 U.S. at 314). The court expressed "no doubt" that the federal issue presented was "actually disputed" because the "parties disagree[d] over the correct reading of [the] federal charter." *Id.* at 56 (citations omitted).

The critical distinctions between this case and *GHMSI* abound. Unlike the *GHMSI* plaintiff, which expressly referenced and relied upon the charter in crafting its breach of trust claim, the Alumni rely solely on the bylaws for their breach of fiduciary duty claim. In *GHMSI*, the plaintiff asked the court to declare that the defendant violated its charter, but the Alumni asked for the D.C. Superior Court to declare that

the Board violated its bylaws and "statutory and common law fiduciary duties." J.A. 42, 45–46. Finally, contrary to the *GHMSI* parties, which disputed the boundaries of GHMSI's rights and duties under the charter, the amended complaint puts at issue only the Board's rights and duties under the bylaws.

Here, the District Court acknowledged that the Alumni "explicitly allege violations of the bylaws," but dismissed the allegations as artful pleading because "certain claims depend on the scope of the Board's authority under the charter." *Jenkins*, 2023 WL 1070552, at *3 (citations omitted). At most, the Alumni's affirmative breach of fiduciary duty claim depends on the charter's scope in that the legal status of the current Howard trustees as "trustees" is defined by the charter. To make out a claim for breach of fiduciary duty under D.C. law, a plaintiff must show: "(1) the existence of a fiduciary relationship with the defendant; (2) breach of a duty imposed by that fiduciary relationship; and (3) an injury caused by such breach." *Caesar v. Westchester Corp.*, 280 A.3d 176, 186 (D.C. 2022) (citation omitted). The charter figures into the first element of that standard. Trustees "owe a fiduciary duty to the corporation," *Pyne v. Jam. Nutrition Holdings Ltd.*, 497 A.2d 118, 131 (D.C. 1985) (citations omitted), but that duty attaches only if the trustee is actually a trustee. The charter, not the bylaws, originally created the position of trustees, and it is therefore relevant to whether the current trustees qualify as trustees. But even though the charter is "necessarily raised" in that loose sense, it does nothing to establish federal jurisdiction because the legal status of the current trustees is not "actually disputed." *Gunn*, 568 U.S. at 258.

The scope of the Board's authority under the charter was otherwise implicated only because Howard argued before the District Court that the Alumni's interpretation of the bylaws was inconsistent "with the broad discretion" the charter grants

the Board. *Jenkins*, 2023 WL 1070552, at *3 (citing Howard's brief in opposition to remand). At oral argument, Howard similarly pointed to an inconsistency between the charter's quorum provision and the bylaws' quorum requirement cited in the amended complaint.

Howard may choose to highlight what it views as conflicts between the bylaws and charter to defend against the allegation that the Board acted inconsistently with its fiduciary duties and authority, but invoking federal law in a defense does not create federal jurisdiction. *Caterpillar Inc. v. Williams*, 482 U.S. 386, 393 (1987) ("[I]t is now settled law that a case may *not* be removed to federal court on the basis of a federal defense, . . . even if the defense is anticipated in the plaintiff's complaint, and even if both parties concede that the federal defense is the only question truly at issue." (citation omitted)); *see also Louisville & Nashville R.R. Co. v. Mottley*, 211 U.S. 149, 152–53 (1908); *Chartered Pub. Sch.*, 930 F.3d at 491 ("[I]t is black-letter law that an anticipated federal defense does not substantiate federal-question jurisdiction." (citation omitted)).

Turning from the District Court's analysis, we now explain why *Bender v. Jordan*, 623 F.3d 1128 (D.C. Cir. 2010), upon which Howard relied heavily during oral argument, does not show that this controversy satisfies *Grable*. *Bender* involved a breach of contract dispute between a bank and its directors. *Id.* at 1129. This Court held that the case presented a federal question under *Grable* because a federal regulation required the parties to enter into the allegedly breached agreement and the "parties' legal duties turn[ed] almost entirely on the proper interpretation of that regulation." *Id.* at 1300–31 (citation omitted). Recognizing that federal jurisdiction is disfavored in disputes raising "fact-bound and situation-specific" questions but favored in cases presenting "nearly 'pure issue[s] of law,'"

*id.* at 1130 (quoting *Empire Healthchoice Assur., Inc. v. McVeigh*, 547 U.S. 677, 700–01 (2006)), *Bender* rested its conclusion on the purely legal question presented—what did the governing federal regulation require?

This fact-versus-law distinction weighs against federal jurisdiction here because the Alumni's breach of fiduciary duty claim is riddled with fact-bound questions about how the Board's conduct stacked up against the bylaws. Even if the charter functions like the federal regulation in *Bender*, the Alumni's requested relief does not turn at all, much less "almost entirely," on the charter's interpretation. *Id.* at 1131.

The record before us simply does not support Howard's assertion that the Alumni "necessarily raise a federal issue because their right to relief turns on the interpretation of the federal charter." Appellees' Br. 21. In fairness, the charter does vest the Board with governing authority and require the Board to enact lawful bylaws. Perhaps the Alumni's suit would necessarily implicate the charter if the Alumni were challenging the Board's authority to enact bylaws in the first instance or arguing that such bylaws were inconsistent with the laws of the United States—but the Alumni make no such claim. Rather, the Alumni's request for relief rests solely on the bylaw provisions they claim the Board failed to follow. As Howard's counsel conceded at oral argument, not every case based on the bylaws will create a substantial federal question. Oral Arg. at 23:48–24:19. We fail to see one here.

In sum, the District Court erred in holding that the Alumni's amended complaint necessarily raises a significant and actually disputed federal issue. Because our disagreement with the District Court on this is fatal to federal subject matter jurisdiction, we need not address *Grable*'s other requirements.

*Gunn*, 568 U.S. at 258 (federal jurisdiction is proper only "[w]here all four [*Grable*] requirements are met").

## III.

For the foregoing reasons, the District Court lacked jurisdiction over the Alumni's suit. We therefore reverse and remand to the District Court with instructions to dismiss this case without prejudice for lack of subject matter jurisdiction.

*So ordered.*